UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KEN ARONSON,

    Plaintiff,

v.

DOG EAT DOG FILMS, INC.,

    Defendant.

Case No. C10-5293 KLS

ORDER GRANTING DEFENDANT'S SPECIAL MOTION TO STRIKE PLAINTIFF'S CLAIMS OF MISAPPROPRIATION OF LIKENESS AND INVASION OF PRIVACY

This matter comes before the Court on Defendant Dog Eat Dog Films, Inc's.[1] special motion to strike Plaintiff Ken Aronson's state law claims for invasion of privacy and misappropriation of likeness pursuant to the Washington Act Limiting Strategic Lawsuits Against Public Participation (Washington Anti-SLAPP Act)[2]. Dkt. 15. The Court has considered the pleadings filed in support of and in opposition to the motion, and the remainder of the file, and **GRANTS** the motion for the

---

[1] According to submissions of Defendant, Dog Eat Dog Films, Inc., a loan-out company owned by Michael Moore and his wife Kathleen Glynn, is incorrectly designated as Defendant in this case. The company that produced the documentary film, *Sicko*, is Goldflat Productions, LLC, owned by Michael Moore, and is the proper Defendant.

[2] The Washington Anti-SLAPP Act was amended, effective June 10, 2010, adding sections to RCW 4.24. Because citations to the statute were not available as of the filing of this order, citations herein refer to the new sections of the statute as numbered in Substitute Senate Bill 6395. Chapter 118, Laws of 2010.

ORDER - 1

reasons stated herein.

**Introduction and Background**

Ken Aronson commenced this action against Defendant asserting that the inclusion of a song and video in Michael Moore's documentary film, *Sicko*, without Aronson's authorization, infringes Plaintiff's exclusive copyright to his video and song. Dkt. 1 pg. 4-5. Plaintiff also asserts two state law claims: Invasion of Privacy - Defendant's unauthorized distribution of Plaintiff's home video gave publicity to a matter concerning Plaintiff's private life in violation of Plaintiff's right to privacy; and Misappropriation of Likeness - Defendant's unauthorized distribution of Plaintiff's home video to the public exposed Plaintiff' s likeness without his consent and for pecuniary gain. Dkt. 1 pg 5-6.

Plaintiff's claims for invasion of privacy and misappropriation of likeness arise from the inclusion of Plaintiff's voice and image in *Sicko*, a documentary film about the contemporary healthcare crisis in America. *Sicko* explores this issue, in part, by examining the stories of several individual patients who have received health care in the United States and contrasting them with stories of Americans who have received healthcare abroad.

One of the short vignettes in *Sicko* tells the story of Eric Turnbow's experience being treated in a United Kingdom hospital. Mr. Turnbow's experience was recorded on home video footage taken by Plaintiff Aronson on a trip Turnbow and Aronson took to England in 1997. Aronson asserts that the resulting footage of the shared trip is his property. Nonetheless, in 2006, in response to a request from Defendant for healthcare stories in preparation of the documentary on the healthcare crisis, Mr. Turnbow sent a copy of the video to Defendant. Mr. Turnbow signed a Standard Materials Release granting Defendant permission to use the footage in connection with the film, *Sicko*

Just over a minute of footage from the video Mr. Turnbow released to Defendant appears in *Sicko*. The documentary shows Mr. Turnbow injuring his shoulder while attempting to walk across

ORDER - 2

London's Abbey Road on his hands. Fifty-two of those seconds show Mr. Turnbow's injury and treatment of the injury, while the remaining nineteen seconds provide the context for Mr. Turnbow's visit to the United Kingdom.

Within the seventy-one seconds of Mr. Turnbow's footage in *Sicko*, sixteen seconds contain Plaintiff's voice and image. These occur in three separate clips. The first clip depicting Aronson is in the context for Mr. Turnbow's visit to London. In a four second clip, Aronson and Turnbow are shown traveling together and singing a song. Plaintiff's voice is heard singing "Oh England, here we go." In the next clip, Aronson's voice is heard saying "Here's Eric, about to walk on his hands across Abbey Road." The film then shows Mr. Turnbow collapsing in the road and Aronson's voice is heard saying "Try it again!" and then, "Are you in pain?" The documentary then follows Mr. Turnbow's medical treatment. Finally, the film shows Mr. Turnbow walking down the street and Aronson's voice is heard saying ""You're all slung up, as Elvis would say."

The Defendant released the documentary *Sicko* in the United States on or about June 22, 2007. The film was nominated in 2008 for an Academy Award in the "Best Documentary" category.

On April 27, 2010, Aronson filed the instant action for copyright infringement, invasion of privacy and misappropriation of likeness. It is these latter two state law claims that Defendant seeks dismissal pursuant to the Washington Anti-SLAPP Act.

**Washington Anti-SLAPP Act**

The Washington legislature has observed that strategic lawsuits against public participation (or SLAPP suits) are "filed against individuals or organizations on a substantive issue of some public interest or social significance," and "are designed to intimidate the exercise of First Amendment rights." Laws of 2002, ch. 232, § 1. As first enacted, the Washington Anti-SLAPP law provided that a person who communicates a complaint or information to any branch or agency of federal, state, or local government is immune from civil liability for claims based upon the communication to

ORDER - 3

1 the agency or organization regarding any matter reasonably of concern to that agency or
2 organization. RCW 4.24.510. The statute was enacted to encourage the reporting of potential
3 wrongdoing to governmental entities by protecting reporting parties from the threat of retaliatory
4 lawsuits. See *Gonthmakher v. City of Bellevue*, 120 Wn. App. 365, 366, 85 P.3d 926 (2004).

5     The 2010 amendments to the Washington Anti-Slapp Act vastly expand the type of conduct
6 protected by the Act. These amendments, patterned after California's Anti-SLAPP Act, became
7 effective on June 10, 2010. See Substitute Senate Bill 6395. Chapter 118, Laws of 2010.

8     The newly enacted provisions provide, in relevant part, that "[a] party may bring a special
9 motion to strike any claim that is based on an action involving public participation" as defined in the
10 Act. Washington Anti-SLAPP Act § 2(4)(a). The Act applies "to any claim, however characterized,
11 that is based on an action involving public participation and petition." Washington Anti-SLAPP Act
12 § 2(2). An action involving public participation includes: "any lawful conduct in furtherance of the
13 exercise of the constitutional right of free speech in connection with an issue of public concern."
14 Washington Anti-SLAPP Act § 2(2)(e).

15     Thus, the Act now provides protection for conduct in the furtherance of the exercise of free
16 speech in connection with an issue of public concern.

17     A moving party bringing a special motion to strike a claim has the initial burden of showing
18 by a preponderance of the evidence that the claim is based on an action involving public
19 participation and petition. If the moving party meets this burden, the burden shifts to the responding
20 party to establish by clear and convincing evidence a probability of prevailing on the claim. If the
21 responding party meets this burden, the court shall deny the motion. Washington Anti-SLAPP Act §
22 2(4)(b). In making this determination, the court shall consider pleadings and supporting and opposing
23 affidavits stating the facts upon which the liability or defense is based. Washington Anti-SLAPP Act §
24 2(4)(c).

25     A moving party that prevails on a special motion to strike pursuant to the Anti-SLAPP Act
26 ORDER - 4

shall be awarded reasonable attorneys' fees and costs incurred in connection with the motion and an amount of ten thousand dollars. Additional sanctions may be awarded to deter repetitive conduct. In the event the court finds that the special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award to a responding party who prevails reasonable attorneys' fees and costs incurred in connection with the motion and an amount of ten thousand dollars. Additional sanctions may also be awarded this party to deter repetitive conduct. Washington Anti-SLAPP Act § 2(6)(b).

Finally, the Act is to be applied and construed liberally to effectuate its general purpose of protecting participants in public controversies from an abusive use of the courts. Washington Anti-SLAPP Act § 3.

This is a case of first impression. There is no authority interpreting this newly enacted legislation. However, the legislation mirrors the California Anti-SLAPP Act and both parties cite to California law as persuasive authority for interpreting the Washington amendments.

Analysis of an Anti-SLAPP motion requires a two-step process. A defendant who files an anti-SLAPP motion bears the threshold burden of showing that the complaint arises from protected activity. *Club Members For An Honest Election v. Sierra Club,* 45 Cal.4th 309, 315, 196 P.3d 1094 (2008); *Dyer v. Childress*, 147 Cal.App.4th 1273, 1278, 55 Cal. Rptr.3d 544 (2007). If the defendant is able to make that showing, the burden shifts to the plaintiff to show a probability of prevailing. *Dyer, at 1278-79; Zamos v. Stroud*, 32 Cal.4th 958, 965, 87 P.3d 802 (2004).

Defendant contends its anti-SLAPP motion should be granted because (1) it has met the burden of establishing that the complaint arose from protected activity, and (2) Plaintiff fails to demonstrate a probability of succeeding on the merits of any of his state law claims. Plaintiff disputes both these contentions.

**1. Causes of Action Based on Defendant's Exercise of First Amendment Rights**

Defendant asserts that Plaintiff's causes of action for invasion of privacy and

ORDER - 5

misappropriation of likeness are based on the Defendant's exercise of free speech in connection with a matter of public interest; i.e. the healthcare crisis. Plaintiff poses a number of arguments in opposition to this assertion. Plaintiff contends that the Anti-SLAPP Act does not apply to Plaintiff's claims because (1) Plaintiff's claims are not based on the Defendant's exercise of free speech, but on the Defendant knowingly misappropriating and publicly disclosing Plaintiff's film footage, song lyrics, voice, and likeness without his permission, (2) the Defendant's claim of protected free speech activity is merely incidental to its misconduct upon which Plaintiff's claims are based, and (3) Plaintiff is not a public figure and did not inject himself into the public debate on social medicine.

The anti-SLAPP law applies to claims "based on" speech or conduct "in furtherance of the exercise of the constitutional right of ... free speech in connection with an issue of public concern." Washington Anti-SLAPP Act § 2. The focus is on whether the plaintiff's cause of action itself is based on an act in furtherance of the defendant's right of free speech. *City of Cotati v. Cashman*, 29 Cal.4th 69, 78, 52 P.3d 695 (2002). In other words, the act underlying the plaintiff's cause, or the act which forms the basis for the plaintiff's cause of action, must itself have been an act in furtherance of the right of free speech. *Equilon Enterprises v. Consumer Cause, Inc*., 29 Cal.4th 53, 66, 52 P.3d 685 (2002).

It is beyond dispute that documentary movies involve free speech. *Dyer v. Childress*, 147 Cal.App.4th 1273, 1279, 55 Cal. Rptr.3d 544 (2007); *M.G. v. Time Warner, Inc*., 89 Cal.App.4th 623, 107 Cal. Rptr.2d 504 (2001); *Dora v. Frontline Video, Inc*., 15 Cal.App.4th 536, 544-546, 18 Cal. Rptr.2d 790 (1993). It is clear that a media defendant may file an anti-SLAPP special motion to strike, *Braun v. Chronicle Publishing Co.,* 52 Cal.App.4th 1036, 1044, 61 Cal. Rptr.2d 58 (1997), and nothing in the Anti-SLAPP Act prohibits a powerful corporate defendant from employing the anti-SLAPP statute against individuals of lesser strength and means. *M.G. v. Time Warner, Inc*., 89 Cal.App.4th 623, 629, 107 Cal.Rptr.2d 504 (2001).

The Washington Legislature has directed that the Act be applied and construed liberally to

ORDER - 6

effectuate its general purpose of protecting participants in public controversies from an abusive use of the courts.  Any conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public concern is subject to the protections of the statute.  That Defendant may be considered a powerful business entity as compared with the private party Plaintiff is of no import under the modern framework of the statute.  Nor is it critical that Plaintiff is not a public figure.  Whereas a public figure, standing alone, may satisfy the public interest element of the Act, a private individual satisfies this requirement so long as there is a direct connection with the individual to a discussion of a topic of widespread public interest.  See *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1149 (S.D. Cal. 2005); *Terry v. Davis Cmty. Church*, 131 Cal. App. 4th 1534 (2005).

It is not disputed that the documentary film, *Sicko*, addresses issues of widespread public concern.  *Sicko* is a feature-length documentary film examining the healthcare crisis in America. Among other issues, *Sicko* addresses patients aggrieved by the healthcare coverage they received or were denied by their health insurance companies, and contrast that with the health care received by Americans when traveling abroad.

However, not all speech in a film is of public significance and therefore entitled to protection under the anti-SLAPP statute.  The issue turns on the specific nature of the speech rather than generalities abstracted from it.  *Dyer v. Childress*, 147 Cal.App.4th 1273, 1280, 55 Cal.Rptr.3d 544 (2007).  The focus is not on the form of plaintiff's cause of action but, rather, the defendant's activity that gives rise to defendant's asserted liability and whether that activity constitutes protected speech. *Navellier v. Sletten*, 29 Cal.4th 82, 92, 52 P.3d 703 (2002); *Martinez v. Metabolife Intern., Inc.*, 113 Cal. App.4th 181, 187, 6 Cal.Rptr.3d 494 (2003).

Here, Plaintiff's causes of action arise out of the unauthorized use of his persona and voice. The Defendant's activity that gives rise to the asserted liability is the story of  Eric Turnbow's experience as an American receiving medical treatment in a United Kingdom hospital.  Plaintiff is depicted initially in the context of Mr. Turnbow's arrival in London and subsequently in the context

ORDER - 7

of Mr. Turnbow suffering his injury and release from treatment. Although involuntarily thrust into the healthcare discussion, Plaintiff's appearance in the documentary is not tangential to the subject of the documentary, but is directly connected to the discussion of the healthcare system.

Application of this principal can be seen in *M.G. v. Time Warner, Inc*., 89 Cal.App.4th 623, 107 Cal. Rptr.2d 504 (2001). In *M.G.*, a magazine story and a television program used a photograph of a Little League team to illustrate a story about adult coaches who sexually molest youths playing team sports. Eight players and two coaches depicted in the photograph sued, alleging invasion of privacy. A number of the players had been victims of sexual molestation and others had not. In response to the defendants' anti-SLAPP special motion to strike, the plaintiffs claimed the question of the identity was not a matter of public interest. *M.G.* found that view of the issue too restrictive. The topic of the article and the program was not whether a particular child was molested, but rather the general topic of child molestation in youth sports, an issue of significance and public interest. Thus, the publication constituted an exercise of the defendants' right of free speech concerning an issue of public interest. *Id.*, at 629. Although the plaintiffs were not public figures and the connection to the issue of child molestation was not of the plaintiffs' making, the issue was of public interest and defendants were entitled to the anti-SLAPP protections.

In contrast to *M.G.* is *Dyer v. Childress*, 147 Cal.App.4th 1273, 55 Cal. Rptr.3d 544 (2007). In *Dyer*, plaintiff financial consultant claimed the screenwriter, director, and producers of the motion picture *Reality Bites* used his name for the main character in the story and misrepresented his actual persona, even though he was not in any way connected with the movie or its subject matter. The court stated the central issue concerned the asserted misuse of plaintiff's persona. The court explained that although the movie may have addressed topics of widespread public interest, there was no connection between those topics and plaintiff's causes of action. *Id.*, at p. 1280. Distinguishing *M.G.*, the court reasoned plaintiff in that case was directly connected to an important issue of public significance, whereas plaintiff financial consultant was not part of any public

ORDER - 8

discussion and was not connected to any such discussion. *Id*., at p. 1282.  Finding no connection between the movie's subject matter and plaintiff, the court concluded defendants failed to show the activity underlying plaintiff's complaint was in furtherance of defendants' constitutional right of free speech in connection with a public issue or issue of public interest. *Id*., at p. 1284.

The present case more closely resembles *M.G.* than *Dyer.*  Unlike *Dyer*, Plaintiff is not asserting that his persona was misrepresented.  Nor is Plaintiff unconnected to the topic of healthcare.  Plaintiff appears as a part of the discussion of healthcare in placing Mr. Turnbow's presence in London in the proper context of the healthcare debate.

The Court finds that Defendant has satisfied the threshold burden of showing that the complaint arises from protected activity.

**2.  Plaintiff's Burden to Establish a Probability of Prevailing**

Once the Defendant has established the threshold burden of showing that the complaint is based on protected activity, the burden shifts to Plaintiff to demonstrate by clear and convincing evidence a probability of prevailing on the merits of his state law claims of invasion of privacy and misappropriation of likeness. See Washington Anti-SLAPP Act § 2(4)(b).  In making this determination, the court considers pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.  Washington Anti-SLAPP Act § 2(4)(c).

**First Amendment and Right of Publicity Claims**

Defendant contends that Plaintiff's right of publicity claims (misappropriation of likeness and invasion of privacy) are barred by the First Amendment and RCW 63.60.070.

In *Reid v. Pierce County*, 136 Wn.2d 195, 206 (1998), the Supreme Court of Washington confirmed that the common law right of privacy exists in Washington.  Under the common law, the tort of invasion of privacy consists of four theories: (1) intrusion, (2) public disclosure, (3) false light, and (4) appropriation.  *Eastwood v. Cascade Broadcasting Co.*, 106 Wn.2d 466, 469 (1986). These four privacy torts are related in that "each involves interference with the interest of the

ORDER - 9

individual in leading, to some reasonable extent, a secluded and private life, free from the prying eyes, ears and publications of others." *Id*. The elements of a claim of misappropriation of a persona are (1) the defendant's use of the plaintiff's identity, (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise, (3) lack of consent, and (4) resulting injury. See Restatement (Second) of Torts §§ 652A-E (1977); *Stewart v. Rolling Stone LLC*, 181 Cal.App.4th 664, 105 Cal. Rptr.3d 98 (2010).

In addition to the common law cause of action, Washington has provided a statutory remedy for misappropriation of identity under RCW 63.60. Every individual or personality has a property right in the use of his or her name, voice, signature, photograph, or likeness. RCW 63.60.010. The unauthorized use of these property rights (personas) is an infringement of the right, subjecting the infringer to liability for statutory or actual damages. RCW 63.60.050 and .060.

Under both the statutory cause of action and the common law, there is no cause of action for the publication of matters in the public interest. RCW 63.60.070 provides that "(1) For purposes of RCW 63.60.050, the use of a name, voice, signature, photograph, or likeness in connection with matters of cultural, historical, political, religious, educational, newsworthy, or public interest, including, without limitation, comment, criticism, satire, and parody relating thereto, shall not constitute a use for which consent is required under this chapter." Further, the statute does not apply to the use of an individual's or personality's name, voice, signature, photograph, or likeness, in any film when the use does not inaccurately claim or state an endorsement by the individual or personality." RCW 63.60.070(2)(b).

Under the First Amendment, a cause of action for missappropriation of another's name and likeness may not be maintained against expressive works, whether factual or fictional. See *Daly v. Viacom, Inc*., 238 F.Supp.2d 1118, 1123 (N.D. Cal. 2002); *Comedy III Prod., Inc. v. Gary Saderup, Inc*., 25 Cal.4th 387, 398, 106 Cal.Rptr.2d 126, 21 P.3d 797 (2001). The use of a plaintiff's identity is not actionable where the publication relates to matters of the public interest, which rests on the

ORDER - 10

1  right of the public to know and the freedom of the press to tell it.  *Yeager v. Cingular Wireless LLC*
2  627 F. Supp.2d 1170, 1174-75 (E.D. Cal. 2008); *Downing v. Abercrombie & Fitch*, 265 F.3d 994,
3  1001 (9th Cir. 2001).  It is only when plaintiff's identity is used without consent to promote an
4  unrelated product of defendant that the defense becomes unavailable.  *Newcombe v. Adolf Coors*
5  *Co.*, 157 F.3d 686, 691-94 (9th Cir.1998); *Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 416 (9th
6  Cir.1996); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1097-98 (9th Cir.1992).  Where the use of a
7  plaintiff's identity in an advertisement is merely illustrative of a commercial theme or product and
8  does not contribute significantly to a matter of public interest, a defendant cannot avail itself of the
9  First Amendment defense.  *Yeager,* 627 F.Supp2d at 1175; *Downing*, 265 F.3d at 1002-03.

10  The appropriate focus is on the use of the likeness itself.  *Baugh v. CBS, Inc.*, 828 F. Supp.
11  745, 753 (N.D. Cal. 1993).  If the purpose is informative or cultural, the use is immune; if it serves
12  no such function but merely exploits the individual portrayed, immunity will not be granted.  *New*
13  *Kids on the Block v. News America Publ'g, Inc.*, 745 F. Supp. 1540, 1546 (C.D. Cal. 1990), *aff'd*,
14  971 F.2d 302 (9th Cir. 1992).

15  It is beyond dispute that the documentary film *Sicko* relates to matters of public interest and
16  is entitled to the First Amendment protection.  The appropriation of Plaintiff's image and voice are
17  immune from the state law causes of action for misappropriation.  Additionally, RCW 63.60.070
18  provides an exemption to Washington's statutory cause of action for misappropriation.

19  The state law claims for misappropriation being barred by the First Amendment and subject
20  to the statutory exemption, Plaintiff has not shown by clear and convincing evidence the probability
21  of prevailing on the merits of these claims.  Accordingly, the state law claims are subject to dismissal
22  pursuant to the Washington Anti-SLAPP Act.

23  **Copyright Preemption of State Law Claims**

24  Defendant next contends that Plaintiff's state law claims are preempted by the Copyright Act,
25  17 U.S.C. § 101-1332,

26  ORDER - 11

Plaintiff's claims of misappropriation of likeness and invasion of privacy arise solely from the Defendant's use of the home video depicting Plaintiff and of which Plaintiff asserts a copyright claim. Specifically, Plaintiff asserts that he is the copyright owner of the home video and the song heard therein, and that Defendant infringed on Plaintiff's exclusive copyrights in using the video and song in the documentary *Sicko*. Regarding the state law claims, Plaintiff asserts that Defendant's unauthorized distribution of Plaintiff's home video gave publicity to a matter concerning Plaintiff's private life in violation of Plaintiff's right to privacy, and Defendant's unauthorized distribution of Plaintiff's home video to the public exposed Plaintiff's likeness without his consent and for pecuniary gain. Dkt. 1 pg 5-6.

Congress enacted the Copyright Act, 17 U.S.C. § 101-1332, to define and protect the rights of copyright holders. Under the Act, "the owner of copyright ... has the exclusive rights to do and to authorize" others to display, perform, reproduce or distribute copies of the work, and to prepare derivative works. Id. § 106. The copyright is the right to control the work, including the decision to make the work available to or withhold it from the public. *Laws v. Sony Music Entertainment, Inc.* 448 F.3d 1134, 1137 (9th Cir. 2006). Section 301 of the Copyright Act preempts legal or equitable rights granted by state common law or statute that are equivalent to copyright. 17 U.S.C. § 301.

The Ninth Circuit applies a two-part test to determine whether a state law claim is preempted by Section 301. *Laws*, at 1137-38. First, the court determines whether the "subject matter" of a state law claim falls within the subject matter of copyright as described in Sections 102 and 103 of the Copyright Act. Second, if it does, the court determines whether the rights asserted under state law are equivalent to the rights contained in Section 106 of the Copyright Act. *Id.*

Citing *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001), Plaintiff argues that the subject matter of his misappropriation and privacy claims are the depiction of his likeness and voice. Despite his likeness being embodied in the copyrightable home video, his likeness is not a work of authorship within the meaning of the Copyright Act and his claims are not subject to

ORDER - 12

preemption.

*Downing*, however, is distinguishable from the present action. In *Downing,* retailer Abercrombie & Fitch was developing a surfing theme for its subscription catalog. Abercrombie published a photo of the plaintiffs, who were participants in a surf championship in Hawaii in 1965. Abercrombie ran the photo, which it had purchased from the photographer (who held the copyright), and identified the plaintiffs by name. Without obtaining plaintiffs' consent to use their names and images, Abercrombie also offered t-shirts exactly like those worn by the plaintiffs in the photo. *Downing*, at 999- 1000. The court noted that although the photograph itself was within the subject matter protected by the Copyright Act, Abercrombie had not merely published the photograph. Rather, it published the photo in connection with a broad surf-themed advertising campaign, identified the plaintiffs-surfers by name, and offered for sale the same t-shirts worn by the plaintiffs in the photo. By doing so, it had suggested that the surfers had endorsed Abercrombie's t-shirts. Accordingly, the court concluded that "it is not the publication of the photograph itself, as a creative work of authorship, that is the basis for [plaintiffs'] claims, but rather, it is the use of the [plaintiffs'] likenesses and their names pictured in the published photograph." *Id.* at 1003.

In contrast to *Downing* is the more recent decision in *Laws v. Sony Music Ent., Inc*., 448 F.3d 1134 (9th Cir. 2006). In *Laws,* the Ninth Circuit examined the case of a singer who alleged that a clip from one of her songs had been used without her permission in subsequent recordings by other artists. *Id*. at 1136. The singer asserted numerous state-law claims, including invasion of privacy and misappropriation of name and voice. *Id*. The recording studio that used the recording argued that her state-law claims were preempted by federal copyright law. *Id*. The Ninth Circuit agreed, holding that the singer's sound recording was "within the subject matter of copyright" as a work of creative authorship that had been "fixed in a tangible medium." *Id*., at 1141, 1143. The Defendant had not used the singer's image, name, or voice recording in any manner beyond the use of the copyright material itself. Thus, the singer's claim in *Laws* "challenged control of the artistic work

ORDER - 13

itself and could hardly be more closely related to the subject matter of the Copyright Act." *Id*., at 1142. The court distinguished *Downing* on the basis that the defendant in *Downing* used the likeness of plaintiffs beyond the use of the copyrighted material. *Id*., at 1141.

The court in *Laws* also found persuasive the California Court of Appeal's decision in *Fleet v. CBS, Inc*., 50 Cal.App.4th 1911, 58 Cal. Rptr.2d 645 (1996). In *Fleet,* plaintiffs brought suit against CBS alleging that by airing a motion picture using their names, pictures, and likenesses without their consent, CBS had violated their right of publicity. The court held that the Copyright Act preempted the action. As the court observed, it was not merely plaintiffs' likenesses which were captured on film-it was their dramatic performances which are copyrightable. *Id*. at 651. Once plaintiffs' performances were put on film, they became dramatic works fixed in a tangible medium of expression. At that point, the performances came within the scope or subject matter of copyright law protection, and the claims were preempted. *Id*. at 650. "In effect, the plaintiffs' right of publicity claim was a question of control over the distribution, display or performance of a movie CBS owned. Since CBS' use of plaintiffs' likenesses did not extend beyond the use of the copyrighted material it held, there was no right of publicity at issue, aside from the actors' performances." *Laws*, at 1142-43.

Here, Plaintiff's state law claims arise solely from the use of the alleged copyrightable home video depicting Plaintiff. Unlike *Downing,* where the defendant used plaintiffs' images well beyond the simple reproduction of the subject photograph, the appropriation of Plaintiff's image, voice, and lyrics is confined to the use of the home video in the documentary *Sicko*. Plaintiff's state law claims are more akin to *Laws* and *Fleet,* wherein the defendants' alleged misappropriations were confined to solely displaying copyrighted material. Accordingly, Plaintiff's state law claims for invasion of privacy and misappropriation are within the subject matter of copyright.

The court further finds that the rights asserted under Washington law are equivalent to the rights protected under the Copyright Act. To satisfy the "equivalent rights" part of the preemption

ORDER - 14

test, the alleged misappropriation must be equivalent to rights within the general scope of copyright. *Laws v. Sony Music Entertainment, Inc*., 448 F.3d 1134, 1143 (9th Cir. 2006). The Copyright Act provides a copyright owner with the exclusive rights of reproduction, preparation of derivative works, distribution, and display. To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights. The state claim must have an extra element which changes the nature of the action. *Id.*

The essence of Plaintiff's state law claims is Defendant's unauthorized distribution of Plaintiff's home video. His claim is under the Copyright Act. See, *Laws v. Sony Music Entertainment, Inc*., 448 F.3d 1134, 1143-45 (9th Cir. 2006); *Fleet v. CBS, Inc*., 50 Cal.App.4th 1911, 1920-22, 58 Cal. Rptr.2d 645 (1996).

The state law claims being preempted by the Copyright Act, Plaintiff has not shown by clear and convincing evidence the probability of prevailing on the merits of these claims. Accordingly, the state law claims are subject to dismissal pursuant to the Washington Anti-SLAPP Act.

**Invasion of Privacy Claim**

Defendant also contends that Plaintiff cannot establish a claim for invasion of privacy.

Washington State recognizes the common law right of privacy and that an individual may bring a cause of action for invasion of that right. *Cawley-Herrmann v. Meredith Corp*., 654 F.Supp.2d 1264, 1265-66 (W.D. Wash. 2009); *Reid v. Pierce County*, 136 Wash.2d 195, 206 (1998). One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public. *Cawley-Herrmann*, at 1266; *Reid*, at 206. The nature of the facts protected by the right of privacy is identified by *Cowles Publ'g Co. v. State Patrol*, 109 Wash.2d 712, 721(1988) as follows:

> Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends.... When these intimate

ORDER - 15

1  
2      details of his life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest.

3  See also *Cawley-Herrmann*, at 1266.

4      Plaintiff has not shown by clear and convincing evidence the probability of prevailing on the

5  merits of the cause of action for invasion of privacy. *Sicko* discloses no facts of intimate details of

6  Plaintiff's life that would be highly offensive to the ordinary reasonable person. Plaintiff's image

7  and voice are not intimate details of his private life, nor are the events portrayed within the zone of

8  privacy. See *Cawley-Herrmann*, at 1266.

9      Defendant is entitled to dismissal of Plaintiff's state law claim for invasion of privacy

10  pursuant to the Anti-SLAPP Act.

11  

12      **Attorney Fees and Costs**

13      The Washington's Anti-SLAPP Act § 2(6)(a) provides:

14  
15  
16  
17      The court shall award to a moving party who prevails, in part or in whole, on a special motion to strike made under subsection (4) of this section, without regard to any limits under state law: (i) Costs of litigation and any reasonable attorneys' fees incurred in connection with each motion on which the moving party prevailed; (ii) An amount of ten thousand dollars, not including the costs of litigation and attorney fees; and (iii) Such additional relief, including sanctions upon the responding party and its attorneys or law firms, as the court determines to be necessary to deter repetition of the conduct and comparable conduct by others similarly situated.

18  
19      The Defendant, having prevailed, is entitled to its reasonable attorneys fees and costs that it

20  has incurred in presenting this anti-SLAPP motion and a statutory award in the prescribed amount of

21  ten thousand dollars.

22                                         **Conclusion**

23      In conclusion, Plaintiff's state law claims for invasion of privacy and misappropriation of

24  likeness are based on conduct that is protected by the Anti-SLAPP Act. Plaintiff cannot show by

25  clear and convincing evidence the probability of prevailing on his state law claims. Accordingly,

26  ORDER - 16

Plaintiff's state law claims are subject to dismissal. Defendant is entitled to an award of reasonable attorneys fees, costs and the statutory award of ten thousand dollars.

**ACCORDINGLY;**

**IT IS ORDERED:**

(1)  Defendant s Special Motion to Strike Plaintiff s Claims of Misappropriation of Likeness and Invasion of Privacy [Dkt. 15] is **GRANTED**

(2) Defendant is awarded its reasonable attorneys fees and costs incurred in presenting this motion and the statutorily prescribed amount of ten thousand dollars.

DATED this 31st day of August, 2010.

Karen L. Strombom
United States Magistrate Judge

ORDER - 17