1
2
3
4
5
6

The Honorable Karen L. Strombom

7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9   KEN ARONSON,                              )   No. 3:10-CV-05293-KLS
                                             )
10              Plaintiff,                    )   DECLARATION OF BRUCE E. H.
                                             )   JOHNSON IN SUPPORT OF
11         v.                                 )   DEFENDANT'S MOTION FOR
                                             )   ATTORNEYS' FEES AND COSTS
12   DOG EAT DOG FILMS, INC.,                 )   UNDER RCW 4.24.525
                                             )
13              Defendant.                    )   **NOTE ON MOTION**
                                             )   **CALENDAR: OCTOBER 8, 2010**
14                                            )
15   _____ )

16         I, Bruce E. H. Johnson, am over the age of 18 and have personal knowledge of all

17   facts stated herein and declare as follows:

18         1.      I am a member of the bar of the State of Washington and of this Court.  I

19   am a partner in the law firm of Davis Wright Tremaine LLP ("DWT"), and am one of the

20   lawyers responsible for representing Dog Eat Dog Films, Inc. ("Defendant") in this matter.

21   I make this declaration in support of Defendant's Motion for Attorneys' Fees and Costs

22   Under RCW 4.24.525.  The matters stated here are true of my own personal knowledge,

23   except for matters stated on information and belief, which I believe to be true.

JOHNSON DECLARATION (3:10-CV-05293-KLS) - 1
DWT 15477177v3 0092022-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

2.      Attached as Exhibit A to this Declaration is a true and correct copy of the Court's August 31, 2010 Order Granting Defendants' Special Motion To Strike Plaintiff's Claims of Misappropriation of Likeness and Invasion of Privacy under Washington's Anti-SLAPP Act, RCW 4.24.525.

3.      Attorney Noelle H. Kvasnosky and I have been the DWT attorneys primarily responsible for working on this matter, with support from paralegal Jennifer Chermoshnyuk.  Both Ms. Kvasnosky and I practice primarily in the area of media/intellectual property, and have represented clients in both state and federal trial courts (including numerous matters before this Court) and all levels of appellate court.  We regularly represent media clients in defending against claims involving speech protected by the First Amendment.

4.      I graduated from Yale Law School in 1977.  DWT's standard and customary hourly rate for my services is $505.00.  A copy of my biography is attached as Exhibit B.  Ms. Kvasnosky graduated with honors from Columbia University School of Law in 2007.  DWT's standard and customary hourly rate for her services is $265.00.  A copy of Ms. Kvasnosky's biography is attached as Exhibit C.  Ms. Chermoshnyuk has ten years experience in litigation with DWT, and her hourly billing rate is $175.  A copy of Ms. Chermoshnyuk's biography is attached as Exhibit D.

5.      We spent a reasonable number of hours bringing this motion, and managed the work load efficiently and economically.  Ms. Kvasnosky, a third-year associate, was primarily responsible for preparing the motion, spending 90.9 hours on legal research, strategy and analysis, drafting the motion to strike, and related matters.  Ms. Chermoshnyuk, provided 29.4 hours of paralegal support in preparing the motion,

JOHNSON DECLARATION (3:10-CV-05293-KLS) - 2
DWT 15477177v3 0092022-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   coordinating the preparation of supporting declarations and filing the motion.  I worked

2   32.1 hours to provide legal analysis and strategy, review and edit the motion to strike and

3   the reply to plaintiff's opposition.

4         6.     For this engagement, DWT bills Defendant for my services and Ms.

5   Kvasnosky's services at a "blended" hourly rate of $340.

6         7.     Defendant is not requesting reimbursement for the fees of other DWT

7   attorneys—including DWT media attorneys well-versed in litigating anti-SLAPP motions

8   in federal court—document clerks, and librarians who assisted in bringing this motion, and

9   whose time was billed to Defendant.

10         8.     Bringing an Anti-SLAPP Motion to Strike under the newly-enacted

11   Washington Anti-SLAPP Act involved specialized legal expertise, and required an

12   understanding of the interplay between and among constitutional mandates, statutory

13   privileges, federal and state procedure, and case law.  I assisted in drafting Washington's

14   Anti-SLAPP Act.  Ms. Kvasnosky and I spent significant time and resources to research

15   the newly enacted statute, its legislative history, and comparable statutes in other

16   jurisdictions with comparable legislation.

17         9.     This fee request is based upon the actual invoices reflecting the recorded

18   daily time entries for each attorney (or paralegal) for services performed in connection

19   with this matter, multiplied by the agreed upon billing rate at the time that the services

20   were performed.  The time entries and billing rates are discussed below and in the

21   accompanying Declaration of Keith Gorder.

22         10.    DWT attorneys and paralegals use time-tracking software to record the time

23   we spend on a particular matter, and to include a narrative description of the tasks

JOHNSON DECLARATION (3:10-CV-05293-KLS) - 3
DWT 15477177v3 0092022-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   performed.  Our regular practice, which we have followed in connection with this matter,

2   is to use the program to track our time on a matter as we are working on it and to draft the

3   narrative description the same or the next business day.  This assures the accuracy of both

4   the amount of time we record and the description of the work actually performed.

5           11.     The fee award Defendant seeks includes $46,965 in attorneys' fees and

6   $697.80 in costs that it incurred in connection with its succesful Special Motion to Strike.

7   Exhibit E is a true and correct copy of DWT's invoices to Defendant, which include daily

8   time entries described above for DWT's work on this matter for which Defendant seeks a

9   fee award, and itimzation of the costs incurred.  The amount of time indicated on Exhibit

10  E, and the narrative descriptions, have not been edited except to (1) redact time that is not

11  part of Defendant's fee request; (2) redact portions of billing narratives that may disclose

12  attorney-client privileged matters or attorney work product; and (3) specify, for this court's

13  convenience, the precise hours for which a fee award is requested.

14          12.     These fees and costs can be summarized as follows:

15

| Task Categories | Time Recorded | Value of Time Recorded |
|---|---|---|
| Analysis of complaints and legal research | 41.0 Hours | $13,131.50 |
| Communications with clients, Plaintiff, involved parties | 7.7 Hours | $ 2,502.50 |
| Preparation of anti-SLAPP motion and supporting papers | 53.5 Hours | $15,781.00 |
| Preparation of anti-SLAPP motion reply papers | 50.2 Hours | $15,550.00 |
|  |  | Total:  $46,965.00 |

| Cost Categories | Amounts Incurred |
|---|---|
| Messenger services | $    75.00 |

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

| | |
|---|---|
| Exhibit Costs | $ 304.32 |
| LEXIS/Westlaw charges | $ 318.48 |
| Total | $ 697.80 |

13.     Defendant seeks an award for fees that are in line with the customary rates DWT charges for similar services.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


DATED this 22nd day of September, 2010 in Seattle, Washington.


By      /s/ Bruce E. H. Johnson
        Bruce E.H. Johnson
        WSBA #7667

JOHNSON DECLARATION (3:10-CV-05293-KLS) - 5
DWT 15477177v3 0092022-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# EXHIBIT A

1

2

3

4

5

6                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
7                                   AT TACOMA

8    KEN ARONSON,

9            Plaintiff,
                                                    Case No. C10-5293 KLS
10        v.
                                                    ORDER GRANTING DEFENDANT'S
11   DOG EAT DOG FILMS, INC.,                        SPECIAL MOTION TO STRIKE
                                                    PLAINTIFF'S CLAIMS OF
             Defendant.                              MISAPPROPRIATION OF
12                                                   LIKENESS AND INVASION OF
13                                                   PRIVACY

14

15          This matter comes before the Court on Defendant Dog Eat Dog Films, Inc's.[1] special motion

16   to strike Plaintiff Ken Aronson's state law claims for invasion of privacy and misappropriation of

17   likeness pursuant to the Washington Act Limiting Strategic Lawsuits Against Public Participation

18   (Washington Anti-SLAPP Act)[2].  Dkt. 15.  The Court has considered the pleadings filed in support

19   of and in opposition to the motion, and the remainder of the file, and **GRANTS** the motion for the

20

21          [1]According to submissions of Defendant, Dog Eat Dog Films, Inc., a loan-out company
     owned by Michael Moore and his wife Kathleen Glynn, is incorrectly designated as Defendant in
     this case. The company that produced the documentary film, *Sicko*, is Goldflat Productions, LLC,
22   owned by Michael Moore, and is the proper Defendant.

23          [2]The Washington Anti-SLAPP Act was amended, effective June 10, 2010, adding sections
     to
24   RCW 4.24.  Because citations to the statute were not available as of the filing of this
     order, citations herein refer to the new sections of the statute as numbered in Substitute Senate Bill
25   6395.  Chapter 118, Laws of 2010.

26   ORDER - 1

1   reasons stated herein.

2                         **Introduction and Background**

3          Ken Aronson commenced this action against Defendant asserting that the inclusion of a

4   song and video in Michael Moore's documentary film, *Sicko*, without Aronson's authorization,

5   infringes Plaintiff's exclusive copyright to his video and song.  Dkt. 1 pg. 4-5.  Plaintiff also asserts

6   two state law claims: Invasion of Privacy - Defendant's unauthorized distribution of Plaintiff's

7   home video gave publicity to a matter concerning Plaintiff's private life in violation of Plaintiff's

8   right to privacy; and Misappropriation of Likeness - Defendant's unauthorized distribution of

9   Plaintiff's home video to the public exposed Plaintiff' s likeness without his consent and for

10  pecuniary gain.  Dkt. 1 pg 5-6.

11         Plaintiff's claims for invasion of privacy and misappropriation of likeness arise from the

12  inclusion of Plaintiff's voice and image in *Sicko*, a documentary film about the contemporary

13  healthcare crisis in America.  *Sicko* explores this issue, in part, by examining the stories of several

14  individual patients who have received health care in the United States and contrasting them with

15  stories of Americans who have received healthcare abroad.

16         One of the short vignettes in *Sicko* tells the story of  Eric Turnbow's experience being

17  treated in a United Kingdom hospital.  Mr. Turnbow's experience was recorded on home video

18  footage taken by Plaintiff Aronson on a trip Turnbow and Aronson took to England in 1997.

19  Aronson asserts that the resulting footage of the shared trip is his property.  Nonetheless, in 2006, in

20  response to a request from Defendant for healthcare stories in preparation of the documentary on

21  the healthcare crisis, Mr. Turnbow sent a copy of the video to Defendant.  Mr. Turnbow signed a

22  Standard Materials Release granting Defendant permission to use the footage in connection with the

23  film, *Sicko*

24         Just over a minute of footage from the video Mr. Turnbow released to Defendant appears in

25  *Sicko*. The documentary shows Mr. Turnbow injuring his shoulder while attempting to walk across

26  ORDER - 2

1  London's Abbey Road on his hands.  Fifty-two of those seconds show Mr. Turnbow's injury and

2  treatment of the injury, while the remaining nineteen seconds provide the context for Mr. Turnbow's

3  visit to the United Kingdom.

4      Within the seventy-one seconds of Mr. Turnbow's footage in *Sicko*, sixteen seconds contain

5  Plaintiff's voice and image.  These occur in three separate clips.  The first clip depicting Aronson is

6  in the context for Mr. Turnbow's visit to London.   In a four second clip, Aronson and Turnbow are

7  shown traveling together and singing a song.  Plaintiff's voice is heard singing "Oh England, here

8  we go."  In the next clip, Aronson's voice is heard saying "Here's Eric, about to walk on his hands

9  across Abbey Road."  The film then shows Mr. Turnbow collapsing in the road and Aronson's

10  voice is heard saying "Try it again!" and then, "Are you in pain?" The documentary then follows

11  Mr. Turnbow's medical treatment.  Finally, the film shows Mr. Turnbow walking down the street

12  and Aronson's voice is heard saying ""You're all slung up, as Elvis would say."

13      The Defendant released the documentary *Sicko* in the United States on or about June 22,

14  2007.  The film was nominated in 2008 for an Academy Award in the "Best Documentary"

15  category.

16      On April 27, 2010, Aronson filed the instant action for copyright infringement, invasion of

17  privacy and misappropriation of likeness.  It is these latter two state law claims that Defendant

18  seeks dismissal pursuant to the Washington Anti-SLAPP Act.

19                         **Washington Anti-SLAPP Act**

20      The Washington legislature has observed that strategic lawsuits against public participation

21  (or SLAPP suits) are "filed against individuals or organizations on a substantive issue of some public

22  interest or social significance," and "are designed to intimidate the exercise of First Amendment

23  rights."  Laws of 2002, ch. 232, § 1.  As first enacted, the Washington Anti-SLAPP law provided

24  that a person who communicates a complaint or information to any branch or agency of federal,

25  state, or local government is immune from civil liability for claims based upon the communication to

26  ORDER - 3

1   the agency or organization regarding any matter reasonably of concern to that agency or

2   organization.  RCW 4.24.510.  The statute was enacted to encourage the reporting of potential

3   wrongdoing to governmental entities by protecting reporting parties from the threat of retaliatory

4   lawsuits.  See *Gonthmakher v. City of Bellevue*, 120 Wn. App. 365, 366, 85 P.3d 926 (2004).

5        The 2010 amendments to the Washington Anti-Slapp Act vastly expand the type of conduct

6   protected by the Act.  These amendments, patterned after California's Anti-SLAPP Act, became

7   effective on June 10, 2010.  See Substitute Senate Bill 6395.  Chapter 118, Laws of 2010.

8        The newly enacted provisions provide, in relevant part, that "[a] party may bring a special

9   motion to strike any claim that is based on an action involving public participation" as defined in the

10   Act.  Washington Anti-SLAPP Act § 2(4)(a).  The Act applies "to any claim, however characterized,

11   that is based on an action involving public participation and petition." Washington Anti-SLAPP Act

12   § 2(2).  An action involving public participation includes: "any lawful conduct in furtherance of the

13   exercise of the constitutional right of free speech in connection with an issue of public concern."

14   Washington Anti-SLAPP Act § 2(2)(e).

15        Thus, the Act now provides protection for conduct in the furtherance of the exercise of free

16   speech in connection with an issue of public concern.

17        A moving party bringing a special motion to strike a claim has the initial burden of showing

18   by a preponderance of the evidence that the claim is based on an action involving public

19   participation and petition.  If the moving party meets this burden, the burden shifts to the responding

20   party to establish by clear and convincing evidence a probability of prevailing on the claim.  If the

21   responding party meets this burden, the court shall deny the motion.  Washington Anti-SLAPP Act §

22   2(4)(b).  In making this determination, the court shall consider pleadings and supporting and opposing

23   affidavits stating the facts upon which the liability or defense is based.  Washington Anti-SLAPP Act §

24   2(4)(c).

25        A moving party that prevails on a special motion to strike pursuant to the Anti-SLAPP Act

26   ORDER - 4

1   shall be awarded reasonable attorneys' fees and costs incurred in connection with the motion and an

2   amount of ten thousand dollars.  Additional sanctions may be awarded to deter repetitive conduct.

3   In the event the court finds that the special motion to strike is frivolous or is solely intended to cause

4   unnecessary delay, the court shall award to a responding party who prevails reasonable attorneys'

5   fees and costs incurred in connection with the motion and an amount of ten thousand dollars.

6   Additional sanctions may also be awarded this party to deter repetitive conduct.  Washington Anti-

7   SLAPP Act § 2(6)(b).

8        Finally, the Act is to be applied and construed liberally to effectuate its general purpose of

9   protecting participants in public controversies from an abusive use of the courts.  Washington Anti-

10  SLAPP Act § 3.

11       This is a case of first impression.  There is no authority interpreting this newly enacted

12  legislation.  However, the legislation mirrors the California Anti-SLAPP Act and both parties cite to

13  California law as persuasive authority for interpreting the Washington amendments.

14       Analysis of an Anti-SLAPP motion requires a two-step process.  A defendant who files an

15  anti-SLAPP motion bears the threshold burden of showing that the complaint arises from protected

16  activity.  *Club Members For An Honest Election v. Sierra Club,* 45 Cal.4th 309, 315, 196 P.3d 1094

17  (2008); *Dyer v. Childress*, 147 Cal.App.4th 1273, 1278, 55 Cal. Rptr.3d 544 (2007).  If the defendant

18  is able to make that showing, the burden shifts to the plaintiff to show a probability of prevailing.

19  *Dyer, at 1278-79; Zamos v. Stroud*, 32 Cal.4th 958, 965, 87 P.3d 802 (2004).

20       Defendant contends its anti-SLAPP motion should be granted because (1) it has met the

21  burden of establishing that the complaint arose from protected activity, and (2) Plaintiff fails to

22  demonstrate a probability of succeeding on the merits of any of his state law claims.  Plaintiff

23  disputes both these contentions.

24       **1.  Causes of Action Based on Defendant's Exercise of First Amendment Rights**

25       Defendant asserts that Plaintiff's causes of action for invasion of privacy and

26  ORDER - 5

1    misappropriation of likeness are based on the Defendant's exercise of free speech in connection with

2    a matter of public interest; i.e. the healthcare crisis.  Plaintiff poses a number of arguments in

3    opposition to this assertion.  Plaintiff contends that the Anti-SLAPP Act does not apply to Plaintiff's

4    claims because (1) Plaintiff's claims are not based on the Defendant's exercise of free speech, but on

5    the Defendant knowingly misappropriating and publicly disclosing Plaintiff's film footage, song

6    lyrics, voice, and likeness without his permission, (2) the Defendant's claim of protected free speech

7    activity is merely incidental to its misconduct upon which Plaintiff's claims are based, and (3)

8    Plaintiff is not a public figure and did not inject himself into the public debate on social medicine.

9        The anti-SLAPP law applies to claims "based on" speech or conduct "in furtherance of the

10   exercise of the constitutional right of ... free speech in connection with an issue of public concern."

11   Washington Anti-SLAPP Act § 2.  The focus is on whether the plaintiff's cause of action itself is

12   based on an act in furtherance of the defendant's right of free speech.  *City of Cotati v. Cashman*, 29

13   Cal.4th 69, 78, 52 P.3d 695 (2002).  In other words, the act underlying the plaintiff's cause, or the act

14   which forms the basis for the plaintiff's cause of action, must itself have been an act in furtherance of

15   the right of free speech.  *Equilon Enterprises v. Consumer Cause, Inc*., 29 Cal.4th 53, 66, 52 P.3d

16   685 (2002).

17       It is beyond dispute that documentary movies involve free speech.  *Dyer v. Childress*, 147

18   Cal.App.4th 1273, 1279, 55 Cal. Rptr.3d 544 (2007); *M.G. v. Time Warner, Inc*., 89 Cal.App.4th

19   623, 107 Cal. Rptr.2d 504 (2001); *Dora v. Frontline Video, Inc*., 15 Cal.App.4th 536, 544-546, 18

20   Cal. Rptr.2d 790 (1993).  It is clear that a media defendant may file an anti-SLAPP special motion to

21   strike, *Braun v. Chronicle Publishing Co.,* 52 Cal.App.4th 1036, 1044, 61 Cal. Rptr.2d 58

22    (1997), and nothing in the Anti-SLAPP Act prohibits a  powerful corporate defendant from

23   employing the anti-SLAPP statute against individuals of lesser strength and means.  *M.G. v. Time*

24   *Warner, Inc*., 89 Cal.App.4th 623, 629, 107 Cal.Rptr.2d 504 (2001).

25       The Washington Legislature has directed that the Act be applied and construed liberally to

26   ORDER - 6

1   effectuate its general purpose of protecting participants in public controversies from an abusive use

2   of the courts.  Any conduct in furtherance of the exercise of the constitutional right of free speech in

3   connection with an issue of public concern is subject to the protections of the statute.  That Defendant

4   may be considered a powerful business entity as compared with the private party Plaintiff is of no import

5   under the modern framework of the statute.  Nor is it critical that Plaintiff is not a public figure.  Whereas

6   a public figure, standing alone, may satisfy the public interest element of the Act, a private

7   individual satisfies this requirement so long as there is a direct connection with the individual to a

8   discussion of a topic of widespread public interest.  See *Four Navy Seals v. Associated Press*, 413 F.

9   Supp. 2d 1136, 1149 (S.D. Cal. 2005); *Terry v. Davis Cmty. Church*, 131 Cal. App. 4th 1534 (2005).

10      It is not disputed that the documentary film, *Sicko*, addresses issues of widespread public

11  concern.  *Sicko* is a feature-length documentary film examining the healthcare crisis in America.

12  Among other issues, *Sicko* addresses patients aggrieved by the healthcare coverage they received or

13  were denied by their health insurance companies, and contrast that with the health care received by

14  Americans when traveling abroad.

15      However, not all speech in a film is of public significance and therefore entitled to protection

16  under the anti-SLAPP statute.  The issue turns on the specific nature of the speech rather than

17  generalities abstracted from it.  *Dyer v. Childress*, 147 Cal.App.4th 1273, 1280, 55 Cal.Rptr.3d 544

18  (2007).  The focus is not on the form of plaintiff's cause of action but, rather, the defendant's activity

19  that gives rise to defendant's asserted liability and whether that activity constitutes protected speech.

20  *Navellier v. Sletten*, 29 Cal.4th 82, 92, 52 P.3d 703 (2002); *Martinez v. Metabolife Intern., Inc*., 113

21  Cal. App.4th 181, 187, 6 Cal.Rptr.3d 494 (2003).

22      Here, Plaintiff's causes of action arise out of the unauthorized use of his persona and voice.

23  The Defendant's activity that gives rise to the asserted liability is the story of  Eric Turnbow's

24  experience as an American receiving medical treatment in a United Kingdom hospital.  Plaintiff is

25  depicted initially in the context of Mr. Turnbow's arrival in London and subsequently in the context

26  ORDER - 7

1   of Mr. Turnbow suffering his injury and release from treatment.  Although involuntarily thrust into

2   the healthcare discussion, Plaintiff's appearance in the documentary is not tangential to the subject

3   of the documentary, but is directly connected to the discussion of the healthcare system.

4   Application of this principal can be seen in  *M.G. v. Time Warner, Inc*., 89 Cal.App.4th 623,

5   107 Cal. Rptr.2d 504 (2001).  In *M.G.*, a magazine story and a television program used a photograph

6   of a Little League team to illustrate a story about adult coaches who sexually molest youths playing

7   team sports.  Eight players and two coaches depicted in the photograph sued, alleging invasion of

8   privacy.  A number of the players had been victims of sexual molestation and others had not.  In

9   response to the defendants' anti-SLAPP special motion to strike, the plaintiffs claimed the question

10  of the identity was not a matter of public interest.  *M.G.* found that view of the issue too restrictive.

11  The topic of the article and the program was not whether a particular child was molested, but rather

12  the general topic of child molestation in youth sports, an issue of significance and public interest.

13  Thus, the publication constituted an exercise of the defendants' right of free speech concerning an

14  issue of public interest.  *Id.*, at 629.  Although the plaintiffs were not public figures and the

15  connection to the issue of child molestation was not of the plaintiffs' making, the issue was of public

16  interest and defendants were entitled to the anti-SLAPP protections.

17  In contrast to *M.G.* is *Dyer v. Childress*, 147 Cal.App.4th 1273, 55 Cal. Rptr.3d 544 (2007).

18  In *Dyer*, plaintiff financial consultant claimed the screenwriter, director, and producers of the motion

19  picture *Reality Bites* used his name for the main character in the story and misrepresented his actual

20  persona, even though he was not in any way connected with the movie or its subject matter. The

21  court stated the central issue concerned the asserted misuse of plaintiff's persona.  The court

22  explained that although the movie may have addressed topics of widespread public interest, there

23  was no connection between those topics and plaintiff's causes of action. *Id.*, at p. 1280.

24  Distinguishing *M.G.*,  the court reasoned plaintiff in that case was directly connected to an important

25  issue of public significance, whereas plaintiff financial consultant was not part of any public

26  ORDER - 8

1   discussion and was not connected to any such discussion. *Id*., at p. 1282.  Finding no connection

2   between the movie's subject matter and plaintiff, the court concluded defendants failed to show the

3   activity underlying plaintiff's complaint was in furtherance of defendants' constitutional right of free

4   speech in connection with a public issue or issue of public interest. *Id*., at p. 1284.

5          The present case more closely resembles *M.G.* than *Dyer.*  Unlike *Dyer*, Plaintiff is not

6   asserting that his persona was misrepresented.  Nor is Plaintiff unconnected to the topic of

7   healthcare.  Plaintiff appears as a part of the discussion of healthcare in placing Mr. Turnbow's

8   presence in London in the proper context of the healthcare debate.

9          The Court finds that Defendant has satisfied the threshold burden of showing that the

10  complaint arises from protected activity.

11              **2.  Plaintiff's Burden to Establish a Probability of Prevailing**

12         Once the Defendant has established the threshold burden of showing that the complaint is

13  based on protected activity, the burden shifts to Plaintiff to demonstrate by clear and convincing

14  evidence a probability of prevailing on the merits of his state law claims of invasion of privacy and

15  misappropriation of likeness.  See Washington Anti-SLAPP Act § 2(4)(b).  In making this

16  determination, the court considers pleadings and supporting and opposing affidavits stating the facts

17  upon which the liability or defense is based.  Washington Anti-SLAPP Act § 2(4)(c).

18                    **First Amendment and Right of Publicity Claims**

19         Defendant contends that Plaintiff's right of publicity claims (misappropriation of likeness and

20  invasion of privacy) are barred by the First Amendment and RCW 63.60.070.

21         In *Reid v. Pierce County*, 136 Wn.2d 195, 206 (1998), the Supreme Court of Washington

22  confirmed that the common law right of privacy exists in Washington.  Under the common law, the

23  tort of invasion of privacy consists of four theories: (1) intrusion, (2) public disclosure, (3) false

24  light, and (4) appropriation. *Eastwood v. Cascade Broadcasting Co.*, 106 Wn.2d 466, 469 (1986).

25  These four privacy torts are related in that "each involves interference with the interest of the

26  ORDER - 9

1  individual in leading, to some reasonable extent, a secluded and private life, free from the prying

2  eyes, ears and publications of others." *Id.*  The elements of a claim of misappropriation of a persona

3  are (1) the defendant's use of the plaintiff's identity, (2) the appropriation of plaintiff's name or

4  likeness to defendant's advantage, commercially or otherwise, (3) lack of consent, and (4) resulting

5  injury.  See Restatement (Second) of Torts §§ 652A-E (1977); *Stewart v. Rolling Stone LLC*, 181

6  Cal.App.4th 664, 105 Cal. Rptr.3d 98 (2010).

7      In addition to the common law cause of action, Washington has provided a statutory remedy

8  for misappropriation of identity under RCW 63.60.  Every individual or personality has a property

9  right in the use of his or her name, voice, signature, photograph, or likeness. RCW 63.60.010.  The

10  unauthorized use of these property rights (personas) is an infringement of the right, subjecting the

11  infringer to liability for statutory or actual damages.  RCW 63.60.050 and .060.

12      Under both the statutory cause of action and the common law, there is no cause of action for

13  the publication of matters in the public interest.  RCW 63.60.070 provides that "(1) For purposes of

14  RCW 63.60.050, the use of a name, voice, signature, photograph, or likeness in connection with

15  matters of cultural, historical, political, religious, educational, newsworthy, or public interest,

16  including, without limitation, comment, criticism, satire, and parody relating thereto, shall not

17  constitute a use for which consent is required under this chapter."  Further, the statute does not apply

18  to the use of an individual's or personality's name, voice, signature, photograph, or likeness, in any

19  film when the use does not inaccurately claim or state an endorsement by the individual or

20  personality."  RCW 63.60.070(2)(b).

21      Under the First Amendment, a cause of action for misappropriation of another's name and

22  likeness may not be maintained against expressive works, whether factual or fictional. See *Daly v.*

23  *Viacom, Inc*., 238 F.Supp.2d 1118, 1123 (N.D. Cal. 2002); *Comedy III Prod., Inc. v. Gary Saderup,*

24  *Inc*., 25 Cal.4th 387, 398, 106 Cal.Rptr.2d 126, 21 P.3d 797 (2001).  The use of a plaintiff's identity

25  is not actionable where the publication relates to matters of the public interest, which rests on the

26  ORDER - 10

1   right of the public to know and the freedom of the press to tell it.  *Yeager v. Cingular Wireless LLC*

2   627 F. Supp.2d 1170, 1174-75 (E.D. Cal. 2008); *Downing v. Abercrombie & Fitch*, 265 F.3d 994,

3   1001 (9th Cir. 2001).  It is only when plaintiff's identity is used without consent to promote an

4   unrelated product of defendant that the defense becomes unavailable.  *Newcombe v. Adolf Coors*

5   *Co.*, 157 F.3d 686, 691-94 (9th Cir.1998); *Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 416 (9th

6   Cir.1996); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1097-98 (9th Cir.1992).  Where the use of a

7   plaintiff's identity in an advertisement is merely illustrative of a commercial theme or product and

8   does not contribute significantly to a matter of public interest, a defendant cannot avail itself of the

9   First Amendment defense.  *Yeager,* 627 F.Supp2d at 1175; *Downing*, 265 F.3d at 1002-03.

10      The appropriate focus is on the use of the likeness itself.  *Baugh v. CBS, Inc.*, 828 F. Supp.

11   745, 753 (N.D. Cal. 1993).  If the purpose is informative or cultural, the use is immune; if it serves

12   no such function but merely exploits the individual portrayed, immunity will not be granted.  *New*

13   *Kids on the Block v. News America Publ'g, Inc.*, 745 F. Supp. 1540, 1546 (C.D. Cal. 1990), *aff'd*,

14   971 F.2d 302 (9th Cir. 1992).

15      It is beyond dispute that the documentary film *Sicko* relates to matters of public interest and

16   is entitled to the First Amendment protection.  The appropriation of Plaintiff's image and voice are

17   immune from the state law causes of action for misappropriation.  Additionally, RCW 63.60.070

18   provides an exemption to Washington's statutory cause of action for misappropriation.

19      The state law claims for misappropriation being barred by the First Amendment and subject

20   to the statutory exemption, Plaintiff has not shown by clear and convincing evidence the probability

21   of prevailing on the merits of these claims.  Accordingly, the state law claims are subject to dismissal

22   pursuant to the Washington Anti-SLAPP Act.

23                          **Copyright Preemption of State Law Claims**

24      Defendant next contends that Plaintiff's state law claims are preempted by the Copyright Act,

25   17 U.S.C. § 101-1332,

26   ORDER - 11

Plaintiff's claims of misappropriation of likeness and invasion of privacy arise solely from the Defendant's use of the home video depicting Plaintiff and of which Plaintiff asserts a copyright claim. Specifically, Plaintiff asserts that he is the copyright owner of the home video and the song heard therein, and that Defendant infringed on Plaintiff's exclusive copyrights in using the video and song in the documentary *Sicko*.  Regarding the state law claims, Plaintiff asserts that Defendant's unauthorized distribution of Plaintiff's home video gave publicity to a matter concerning Plaintiff's private life in violation of Plaintiff's right to privacy, and Defendant's unauthorized distribution of Plaintiff's home video to the public exposed Plaintiff's likeness without his consent and for pecuniary gain.  Dkt. 1 pg 5-6.

Congress enacted the Copyright Act, 17 U.S.C. § 101-1332, to define and protect the rights of copyright holders.  Under the Act, "the owner of copyright ... has the exclusive rights to do and to authorize" others to display, perform, reproduce or distribute copies of the work, and to prepare derivative works.  Id. § 106.  The copyright is the right to control the work, including the decision to make the work available to or withhold it from the public.  *Laws v. Sony Music Entertainment, Inc.* 448 F.3d 1134, 1137 (9th Cir. 2006).  Section 301 of the Copyright Act preempts legal or equitable rights granted by state common law or statute that are equivalent to copyright.  17 U.S.C. § 301.

The Ninth Circuit applies a two-part test to determine whether a state law claim is preempted by Section 301.  *Laws*, at 1137-38.  First, the court determines whether the "subject matter" of a state law claim falls within the subject matter of copyright as described in Sections 102 and 103 of the Copyright Act.  Second, if it does, the court determines whether the rights asserted under state law are equivalent to the rights contained in Section 106 of the Copyright Act.  *Id.*

Citing *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001), Plaintiff argues that the subject matter of his misappropriation and privacy claims are  the depiction of his likeness and voice.  Despite his likeness being embodied in the copyrightable home video, his likeness is not a work of authorship within the meaning of the Copyright Act and his claims are not subject to

ORDER - 12

1    preemption.

2        *Downing*, however, is distinguishable from the present action. In *Downing,* retailer

3    Abercrombie & Fitch was developing a surfing theme for its subscription catalog.  Abercrombie

4    published a photo of the plaintiffs, who were participants in a surf championship in Hawaii in 1965.

5    Abercrombie ran the photo, which it had purchased from the photographer (who held the copyright),

6    and identified the plaintiffs by name.  Without obtaining plaintiffs' consent to use their names and

7    images, Abercrombie also offered t-shirts exactly like those worn by the plaintiffs in the photo.

8    *Downing*, at 999- 1000.  The court  noted that although the photograph itself was within the subject

9    matter protected by the Copyright Act, Abercrombie had not merely published the photograph.

10   Rather, it published the photo in connection with a broad surf-themed advertising campaign,

11   identified the plaintiffs-surfers by name, and offered for sale the same t-shirts worn by the plaintiffs

12   in the photo.  By doing so, it had suggested that the surfers had endorsed Abercrombie's t-shirts.

13   Accordingly, the court concluded that "it is not the publication of the photograph itself, as a creative

14   work of authorship, that is the basis for [plaintiffs'] claims, but rather, it is the use of the [plaintiffs']

15   likenesses and their names pictured in the published photograph." *Id.* at 1003.

16       In contrast to *Downing* is the more recent decision in *Laws v. Sony Music Ent., Inc*., 448 F.3d

17   1134 (9th Cir. 2006).  In *Laws,* the Ninth Circuit examined the case of a singer who alleged that a

18   clip from one of her songs had been used without her permission in subsequent recordings by other

19   artists.  *Id*. at 1136.  The singer asserted numerous state-law claims, including invasion of privacy

20   and misappropriation of name and voice.  *Id.*  The recording studio that used the recording argued

21   that her state-law claims were preempted by federal copyright law.  *Id.*  The Ninth Circuit agreed,

22   holding that the singer's sound recording was "within the subject matter of copyright" as a work of

23   creative authorship that had been "fixed in a tangible medium."  *Id*., at 1141, 1143.  The Defendant

24   had not used the singer's image, name, or voice recording in any manner beyond the use of the

25   copyright material itself.  Thus, the singer's claim in *Laws* "challenged control of the artistic work

26   ORDER - 13

1    itself and could hardly be more closely related to the subject matter of the Copyright Act." *Id*., at

2    1142.  The court distinguished *Downing* on the basis that the defendant in *Downing* used the

3    likeness of plaintiffs beyond the use of the copyrighted material. *Id*., at 1141.

4         The court in *Laws* also found persuasive the California Court of Appeal's decision in *Fleet v.*

5    *CBS, Inc*., 50 Cal.App.4th 1911, 58 Cal. Rptr.2d 645 (1996).  In *Fleet,* plaintiffs brought suit against

6    CBS alleging that by airing a motion picture using their names, pictures, and likenesses without their

7    consent, CBS had violated their right of publicity.  The court held that the Copyright Act preempted

8    the action.  As the court observed, it was not merely plaintiffs' likenesses which were captured on

9    film-it was their dramatic performances which are copyrightable.  *Id*. at 651.  Once plaintiffs'

10   performances were put on film, they became dramatic works fixed in a tangible medium of

11   expression.  At that point, the performances came within the scope or subject matter of copyright

12   law protection, and the claims were preempted. *Id*. at 650.  "In effect, the plaintiffs' right of publicity

13   claim was a question of control over the distribution, display or performance of a movie CBS

14   owned. Since CBS' use of plaintiffs' likenesses did not extend beyond the use of the copyrighted

15   material it held, there was no right of publicity at issue, aside from the actors' performances."  *Laws*,

16   at 1142-43.

17        Here, Plaintiff's state law claims arise solely from the use of the alleged copyrightable home

18   video depicting Plaintiff.  Unlike *Downing,* where the defendant used plaintiffs' images well beyond

19   the simple reproduction of the subject photograph, the appropriation of Plaintiff's image, voice, and

20   lyrics is confined to the use of the home video in the documentary *Sicko*.  Plaintiff's state law claims

21   are more akin to *Laws* and *Fleet,* wherein the defendants' alleged misappropriations were confined

22   to solely displaying copyrighted material.  Accordingly, Plaintiff's state law claims for invasion of

23   privacy and misappropriation are within the subject matter of copyright.

24        The court further finds that the rights asserted under Washington law are equivalent to the

25   rights protected under the Copyright Act.  To satisfy the "equivalent rights" part of the preemption

26   ORDER - 14

1  test, the alleged misappropriation must be equivalent to rights within the general scope of copyright.

2  *Laws v. Sony Music Entertainment, Inc*., 448 F.3d 1134, 1143 (9th Cir. 2006).  The Copyright Act

3  provides a copyright owner with the exclusive rights of reproduction, preparation of derivative

4  works, distribution, and display.  To survive preemption, the state cause of action must protect rights

5  which are qualitatively different from the copyright rights. The state claim must have an extra

6  element which changes the nature of the action.  *Id.*

7       The essence of Plaintiff's state law claims is Defendant's unauthorized distribution of

8  Plaintiff's home video.  His claim is under the Copyright Act.  See,  *Laws v. Sony Music*

9  *Entertainment, Inc*., 448 F.3d 1134, 1143-45 (9th Cir. 2006); *Fleet v. CBS, Inc*., 50 Cal.App.4th

10  1911, 1920-22,  58 Cal. Rptr.2d 645 (1996).

11       The state law claims being preempted by the Copyright Act, Plaintiff has not shown by clear

12  and convincing evidence the probability of prevailing on the merits of these claims.  Accordingly,

13  the state law claims are subject to dismissal pursuant to the Washington Anti-SLAPP Act.

14                       **Invasion of Privacy Claim**

15       Defendant also contends that Plaintiff cannot establish a claim for invasion of privacy.

16       Washington State recognizes the common law right of privacy and that an individual may

17  bring a cause of action for invasion of that right.  *Cawley-Herrmann v. Meredith Corp*., 654

18  F.Supp.2d 1264, 1265-66 (W.D. Wash. 2009); *Reid v. Pierce County*, 136 Wash.2d 195, 206 (1998).

19  One who gives publicity to a matter concerning the private life of another is subject to liability to the

20  other for invasion of privacy, if the matter publicized is of a kind that (a) would be highly offensive

21  to a reasonable person, and (b) is not of legitimate concern to the public. *Cawley-Herrmann*, at

22  1266; *Reid*, at 206.  The nature of the facts protected by the right of privacy is identified by *Cowles*

23  *Publ'g Co. v. State Patrol*, 109 Wash.2d 712, 721(1988) as follows:

24       Every individual has some phases of his life and his activities and some facts about
         himself that he does not expose to the public eye, but keeps entirely to himself or at
25       most reveals only to his family or to close personal friends.... When these intimate

26  ORDER - 15

details of his life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest.

See also *Cawley-Herrmann*, at 1266.

Plaintiff has not shown by clear and convincing evidence the probability of prevailing on the merits of the cause of action for invasion of privacy. *Sicko* discloses no facts of intimate details of Plaintiff's life that would be highly offensive to the ordinary reasonable person. Plaintiff's image and voice are not intimate details of his private life, nor are the events portrayed within the zone of privacy. See *Cawley-Herrmann*, at 1266.

Defendant is entitled to dismissal of Plaintiff's state law claim for invasion of privacy pursuant to the Anti-SLAPP Act.

**Attorney Fees and Costs**

The Washington's Anti-SLAPP Act § 2(6)(a) provides:

The court shall award to a moving party who prevails, in part or in whole, on a special motion to strike made under subsection (4) of this section, without regard to any limits under state law: (i) Costs of litigation and any reasonable attorneys' fees incurred in connection with each motion on which the moving party prevailed; (ii) An amount of ten thousand dollars, not including the costs of litigation and attorney fees; and (iii) Such additional relief, including sanctions upon the responding party and its attorneys or law firms, as the court determines to be necessary to deter repetition of the conduct and comparable conduct by others similarly situated.

The Defendant, having prevailed, is entitled to its reasonable attorneys fees and costs that it has incurred in presenting this anti-SLAPP motion and a statutory award in the prescribed amount of ten thousand dollars.

**Conclusion**

In conclusion, Plaintiff's state law claims for invasion of privacy and misappropriation of likeness are based on conduct that is protected by the Anti-SLAPP Act. Plaintiff cannot show by clear and convincing evidence the probability of prevailing on his state law claims. Accordingly,

ORDER - 16

1  Plaintiff's state law claims are subject to dismissal.  Defendant is entitled to an award of reasonable

2  attorneys fees, costs and the statutory award of ten thousand dollars.

3         **ACCORDINGLY;**

4         **IT IS ORDERED:**

5         (1)  Defendant s Special Motion to Strike Plaintiff s Claims of Misappropriation of Likeness

6         and Invasion of Privacy [Dkt. 15] is **GRANTED**

7         (2) Defendant is awarded its reasonable attorneys fees and costs incurred in presenting this

8         motion and the statutorily prescribed amount of ten thousand dollars.

9

10        DATED this 31st day of August, 2010.

11

12

13

14

15                                   Karen L. Strombom
                                     United States Magistrate Judge
16

17

18

19

20

21

22

23

24

25

26  ORDER - 17

# EXHIBIT B



# Bruce E. H. Johnson

Bruce Johnson, a veteran litigator, represents information industry clients on issues involving media and communications law as well as technology and intellectual property matters. His expertise includes advising on First Amendment law issues, particularly involving commercial speech, commercial transactions and consumer rights. The author of Washington's Reporter's Shield Law, Bruce also works extensively on journalist privilege issues, regularly defending reporters, editors and other members of the media. He also represents national clients in privacy and security matters, advertising liability risks, defamation and online liability cases. He is the author of the Washington Act Limiting Strategy Lawsuits Against Public Participation ("Washington Anti-SLAPP Law"), which was enacted by the State of Washington in March 2010.

**Selected Experience**

**Aronson v. Dog Eat Dog Films, Inc.**
Dog Eat Dog Films, Inc.
Ongoing
Successfully represented a film production company in motion to dismiss invasion of privacy and misappropriation claims relating to the documentary film "Sicko." This is the first substantive decision to apply Washington's new anti-SLAPP statute, which provides important procedural safeguards for media entities and others against unwarranted and meritless suits that stem from the exercise of defendants' First Amendment rights.

**Chamber of Commerce of the United States v. Servin, et al.**
The Yes Men
Ongoing
Defending the free speech rights of the Yes Men against trademark claims filed after the Yes Men performed a political parody of the Chamber's controversial position on global climate change.

**Curious Theatre Co. v. Colorado Department of Public Health & Environment**
Theatre Communications Group
2010
Represented Theatre Communications Group, which includes 476 theaters, as amicus in support of First Amendment challenge to Colorado law outlawing theatrical smoking. (09-1118) Read the amicus brief.

**Doe v. Reed**
National and Washington state media
2010
Submitted amicus brief on behalf of national and Washington state media in support of constitutionality of the Washington Public Records Act, which required public disclosure of names of referendum sponsors and signatures.

**Brain vs. Halsne**



**Bruce E. H. Johnson**

*Partner*
*Chair, Privacy & Security Practice and Vice Chair, Media Law Practice*

brucejohnson@dwt.com
206.757.8069 direct
206.757.7069 fax

Suite 2200
1201 Third Avenue
Seattle, Washington 98101

**Related Practices**

Privacy & Security
Media & First Amendment
Intellectual Property Litigation
Appellate Litigation
Advertising, Marketing & Promotions
Theft of Ideas
Access to Public Records & Proceedings
Commercial Speech & Advertising
Defamation & Privacy
Pre-Publication & Pre-Broadcast Review
Prior Restraints
Subpoenas & Reporters' Privilege
Copyright
Trademark
Digital Media
Copyright Litigation
Trademark Litigation
Litigation

**Related Industries**

Internet and E-Commerce
Communications, Media & Technology
Entertainment
Publishing
Software & Technology



KIRO-7
2009
Defended KIRO-7, a Seattle-based television station, and one of its
reporters in a defamation lawsuit brought by a Tacoma, Wash., pediatric
dentist.

**Cawley-Herrmann v. Meredith Corporation**
Meredith Corporation
2009
Successfully represented Meredith Corp., owner of KPTV in Portland,
Ore., in motion to dismiss and subsequent motion for reconsideration in a
lawsuit brought by plaintiff alleging a new theory of invasion of privacy
through the publicity of her identity as the subject of allegedly false and
unsubstantiated allegations.

**Hust v. State of Wyoming, et al.**
Media defendants
2009
In federal court, represented media defendants accused by the plaintiff of
defamation. Defendants won a dismissal with prejudice on grounds that
the two-year statute of limitations had expired. The dismissal was affirmed
by the 9th Circuit in March 2010.

**Hutchison v. KIRO Inc.**
KIRO Inc.
2009
Represented local television station in a motion to unseal summary
judgment documents filed in a discrimination lawsuit brought by a former
news anchor. The court ordered the documents to be unsealed with only
a few redactions.

**United States of America v. Lucretia James**
Canadian Broadcasting Corporation (CBC)
2009
Represented CBC in granting an order, in part, to intervene and unseal
documents from federal criminal court files for use in its television
program "The Fifth Estate."

**United States v. Farris and United States V. James**
Canadian Broadcasting Corporation
2009
Representing the Canadian Broadcasting Corporation in connection with
motions to intervene and unseal criminal files in a cross-border drug
smuggling case.

**United States v. Leonard Joseph Ferris; United States v. James**
Canadian Broadcasting Corporation (CBC)
2009
Represented intervenor CBC in motions to intervene and unseal criminal
records filed in a cross-border drug smuggling case. Motions were filed in
the U.S. District Courts for the Eastern and Western Districts of
Washington. The courts granted the motions in part.

**Bruce E. H. Johnson**

*Partner*
brucejohnson@dwt.com
206.757.8069



**Zango, Inc. v. Kaspersky Lab, Inc.**
Kaspersky Lab, Inc
2009
Summary judgment dismissing lawsuit against distributor of anti-malware products, recognizing "robust" immunity under 47 U.S.C. § 230(c)(2) enabling consumer access to information about potentially "objectionable" software. In 2009, the U.S. Court of Appeals for the 9th Circuit affirmed the lower court's 2007 dismissal.

**Fair Housing Council of San Fernando Valley, et al. v. Roommates.com, LLC**
Media clients of Davis Wright Tremaine
2008
Submitted amicus brief on behalf of media amici in 9th Circuit's en banc review of the scope of immunity afforded by Section 230 of the Communications Decency Act to mixed-content websites.

**Walters v. Seattle School District No. 1**
The Seattle Times Company
2008
Represented the Seattle Times in an unusual lawsuit alleging civil rights violations arising from the newspaper's coverage of a recruiting scandal involving two high school basketball coaches. The district court granted the Times' motion to dismiss because it concluded that there were no valid allegations of conspiracy or of interference in contractual relations stemming from news coverage.

**WizKids, LLC v. Michael, Best & Friedrich, LLP**
WizKids, LLC
2008
Represented plaintiffs in patent malpractice claim arising from failure to secure U.S. rights on game patent; successfully settled.

**Browne v. AVVO, Inc.**
AVVO
2007
Defended attorney evaluation website. Court granted motion to dismiss on First Amendment opinion grounds, also holding that distribution of information is not "commerce" under state consumer protection laws.

**Clapp v. Olympic View Publishing Co.**
Sequim Gazette
2007
Represented defendant in favorable application of public reports privilege by Division II in defamation lawsuit, affirming dismissal of case on the pleadings.

**Paterson v. Little, Brown & Co.**
Hachette Brook Group USA Inc.
2007

**Bruce E. H. Johnson**

*Partner*
brucejohnson@dwt.com
206.757.8069



Secured summary judgment dismissing defamation and false light claims brought by "father of DOS" computer operating system against book publisher, author and researcher on grounds that statements in suit were protected opinion or were not published with actual malice.

**Powers v. City of Seattle**
The Seattle Times Company
2007
Successfully represented client in an opposing motion to join media entities as indispensable parties in a defamation lawsuit filed by terminated city employee against City of Seattle. Judge ruled that our client would not be added as a defendant.

**Berry v. Penguin Group (USA), Inc.**
Penguin Group
2006
Won dismissal of copyright lawsuit against book publisher on jurisdictional grounds.

**Spafford v. EchoStar Communications Corp.**
EchoStar Satellite Corporation
2006
Represented defendant in a First Amendment challenge to regulations barring telephone solicitation, but the court declined our client's motion to dismiss.

**Fidelity Mortgage Corp. v. The Seattle Times Company**
The Seattle Times Co.
2005
Affirmed dismissal of lawsuit alleging unfair trade practice liability by the newspaper's real estate news articles and mortgage rate advertising policies, resulting in a sanctions award against the plaintiff and his attorney.

**Expeditors International of Washington, Inc. v. Expeditors (Japan) Ltd.**
PLS Co. Ltd.
2004
Dismissal of Japanese contract claims for lack of federal diversity jurisdiction.

**Harris v. City of Seattle**
Local broadcaster
2004
Granted summary judgment dismissing false light, intentional infliction of emotional distress, and outrage claims by former public official.

**Grassmueck v. Barnett**
Michael A. Grassmueck
2003

**Bruce E. H. Johnson**

*Partner*
brucejohnson@dwt.com
206.757.8069



Represented plaintiff in a suit alleging breach of duty of care. Defendant claimed they shouldn't be sued for mismanagement because their articles of incorporation had indemnification provisions. However, the judge ruled that the director protection provision in the corporation's articles do not shield defendant directors and officers from liability, and the plaintiff's motion to dismiss was denied.

**Viacom Outdoor, Inc. v. Clallam County (Wash.)**
CBS Outdoor
2003
Represented client in successful challenge to county sign ordinance.

**Presentations**

Event Co-chair, Legal Frontiers in Digital Media, Third Annual Conference, Stanford University, Stanford, Calif., May 6-7, 2010

"Protecting Constitutional Rights in the Digital Age," Practising Law Institute Webinar, 05.03.10

"Advertising, Commercial Speech and Corporate Expression," Communications Law in the Digital Age, Practising Law Institute Communications Law Conference, New York, 11.11.09

"When Protected Speech Meets Embedded Promotions: Product Integration, Sponsorship and Ad-linking," MLRC-Southwestern Law School Media and Entertainment Law Conference, Los Angeles, 01.15.09

Bruce Johnson: Internet Law (video), 12.16.08

"Regulating Attorney Ratings: Emerging Trends and First Amendment Implications," 34th Annual ABA National Conference on Professional Responsibility, Boston, 05.31.08

Seminar on Legal Frontiers in Digital Media, MLRC, Stanford Law School and Stanford Publishing Courses, Stanford, Calif., 05.15.08

"New Developments in Commercial Speech," Communications Law 2007, Practising Law Institute, New York, 11.08.07

"Global Privacy Hypothetical Case Study," Privacy Symposium at Harvard University, Boston, Summer 2007

**Advisories**

Supreme Court Rejects Broad Constitutional Challenge to Public Records Act, 06.28.10

Washington Enacts New Anti-SLAPP Law, 03.18.10

Federal Agencies Release Model Privacy Notice for Financial Institutions, 11.19.09

Update: 9th Circuit Panel Modifies Yahoo! Decision On Section 230, 06.23.09

9th Circuit Panel: Section 230 Immunity Applies to Negligence Claim; Application to Promissory Estoppel Claim Rejected, 05.12.09

**Bruce E. H. Johnson**

*Partner*
brucejohnson@dwt.com
206.757.8069



9th Circuit Affirms Immunity for Pure Third-Party Web Content: En banc decision defines scope of immunity for mixed-content websites, 04.08.08

Federal Court Dismisses Suit by Alleged Malware Vendor, 09.06.07

**Books / Publications**

"Three Significant Commercial Speech Decisions," MLRC MediaLawLetter, March 2010

"Commercial Speech and Free Expression: The United States and Europe Compared," Journal of International Media & Entertainment Law, Vol. 2, No. 2, Winter 2009

"First Amendment Law Letter," Davis Wright Tremaine, October 2009

Brief of Amicus Curiae Association of National Advertisers, Inc. in Support of Petitioners, 04.27.09

"Recollections of Cam DeVore, First Amendment Pioneer," Communications Lawyer, Vol. 26, No. 2, pp 18-19 , March 2009

"Section 230 Immunity and State Right of Publicity Claims," MLRC Bulletin, Dec. 2008

"Fair Housing Council of San Fernando Valley v. Roommates.com: The Ninth Circuit Court of Appeals Announces A New Legal Test For Mixed-Content Websites," New York State Bar Association Entertainment, Arts and Sports Law Journal, Volume 18, Number 3, Summer 2008

"Advertising and Commercial Speech, A First Amendment Guide - Second Edition," New York, NY: Practising Law Institute, 2008

"Amendment XXVIII? Defending Corporate Speech Rights," 58 South Carolina L. Rev. 855, Summer 2007

"A Marketplace of Ideas or 'Continuous Partial Attention'?" The Masthead (NCEW), Vol. 59, No. 2, 06.01.07

"First Amendment Commercial Speech Protections: A Practitioner's Guide," 41 Loy. L.A. L. Rev. 297, 2007

"California Code of Civil Procedure § 425.17(c):  A New Restriction on Anti-SLAPP Motions," First Amendment Law Letter, Davis Wright Tremaine (PDF), Fall 2005

"The Rights of Telemarketers, Faxers, and Spammers are Subordinated to the Rights of Consumers," The Computer & Internet Lawyer, Vol. 22, No. 7, July 2005

"Conflict Issues in Confidential Source Cases: New Dangers from the Model Rules?" Media Law Resource Center Bulletin No. 4, Part B, 2005

"Why Format, Not Content, is the Key to Identifying Commercial Speech," Case Western Reserve Law Review, Vol. 54, No. 4, Summer 2004

"Is There a Constitutional Right to Bombard the Public with Penis Enlargement Proposals?" Communications Lawyer, Volume 21, No. 2, Summer 2003

**Bruce E. H. Johnson**

*Partner*
brucejohnson@dwt.com
206.757.8069



**Professional & Community Activities**

- Member; Chair, 1999-2000, Media Law and Defamation Torts Committee, Tort and Insurance Practice Section – American Bar Association
- Member; Executive Committee, 2000-2005; President, 2004 – Defense Counsel Section, Media Law Resource Center
- Media Law Reporter Advisory Board, 2005-present
- Association of Professional Responsibility Lawyers
- Chair Emeritus, 2006-present; Board member, 1993-present; Chair, 2004-2006; President, 1999-2001 – Seattle Repertory Theatre Board of Trustees
- Board Member, Seattle Repertory Theatre Foundation Board of Trustees, 2006-present
- National Council for the American Theater, 2005-present
- Board Member, EmcArts Inc., 2007-present
- Board Member President, Pacific Musicworks (formerly known as Pacific Operaworks), 2007-present

**Professional Recognition**

- Named as one of "America's Leading Lawyers for Business" by Chambers USA in First Amendment Litigation (National), 2007-2010
- Named as one of the "Best Lawyers in America" in First Amendment Law by Woodward/White, 1993-present; named in Ethics and Professional Responsibility Law, 2010-present
- Selected to "Washington Super Lawyers," Law & Politics, 2008-2010
- Named as one of "155 Top Lawyers" by Seattle Magazine and Seattle Business Monthly, 2007
- Avvo Rated

**Education**

M.A., University of Cambridge, 1978

J.D., Yale Law School, 1977

B.A., University of Cambridge, 1974

- First Class Honours

A.B., Harvard College, 1972, magna cum laude

- Phi Beta Kappa

**Bruce E. H. Johnson**

*Partner*
brucejohnson@dwt.com
206.757.8069



**Admissions**

Washington, 1977
California, 1992
U.S. District Court Western District of Washington, 1977
U.S. District Court Eastern District of Washington, 1980
U.S. District Court Northern District of California
U.S. District Court Southern District of California
U.S. District Court Eastern District of California
U.S. District Court Central District of California
U.S. Supreme Court, 1983
U.S. Court of Appeals 8th Circuit, 2004
U.S. Court of Appeals 9th Circuit, 1978
U.S. Court of Appeals 10th Circuit, 1984

**Bruce E. H. Johnson**

*Partner*
brucejohnson@dwt.com
206.757.8069

# EXHIBIT C



# Noelle Helen Kvasnosky

Noelle focuses her practice on licensing and commercial transactions for technology, media, entertainment, and communications clients. She structures, negotiates, and drafts agreements in a variety of media and technology transactions. Noelle also counsels clients on a range of media and intellectual property issues, including defamation, copyright, trademarks, right of publicity, privacy, prepublication review, and First Amendment issues. She also has experience litigating copyright, defamation, and First Amendment matters in state and federal court.

**Practice Highlights**

- Negotiation of content, communications, and technology contracts
- Defense of copyright infringement for media clients in film and television
- Trademark enforcement for clients in a variety of industries
- Advice to national, regional, and local media on clearance issues for programmers, publishers, and entertainment companies
- Counsel on privacy and information management, including developing record management programs, policies, and procedures

**Selected Experience**

**Aronson v. Dog Eat Dog Films, Inc.**

Dog Eat Dog Films, Inc.
Ongoing
Successfully represented a film production company in motion to dismiss invasion of privacy and misappropriation claims relating to the documentary film "Sicko." This is the first substantive decision to apply Washington's new anti-SLAPP statute, which provides important procedural safeguards for media entities and others against unwarranted and meritless suits that stem from the exercise of defendants' First Amendment rights.

**Curious Theatre Co. v. Colorado Department of Public Health & Environment**

Theatre Communications Group
2010
Represented Theatre Communications Group, which includes 476 theaters, as amicus in support of First Amendment challenge to Colorado law outlawing theatrical smoking. (09-1118) Read the amicus brief.

**Brain vs. Halsne**

KIRO-7
2009
Defended KIRO-7, a Seattle-based television station, and one of its reporters in a defamation lawsuit brought by a Tacoma, Wash., pediatric dentist.



**Noelle Helen Kvasnosky**

*Associate*
noellekvasnosky@dwt.com
206.757.8196 direct
206.757.7196 fax

Suite 2200
1201 Third Avenue
Seattle, Washington 98101

**Related Practices**
Intellectual Property Litigation
Copyright Litigation
Media & First Amendment
Defamation & Privacy
Privacy & Security
Pre-Publication & Pre-Broadcast Review
Technology Transactions
Copyright

**Related Industries**
Communications, Media & Technology
Internet and E-Commerce
Art



**Closely held company shareholder fiduciary litigation**
Closely held corporation
2009
Defended closely held corporation and its officers against complex claims by a former shareholder relating to share restriction agreements, stock pledges, and claims of misrepresentation. Successfully resolved at mediation after depositions in four states. (U.S. District Court for the District of Massachusetts, 2009)

**Lucasfilm Ltd. v. Ainsworth, et al.**
2008
Drafted expert opinion at the request of defendants on U.S. intellectual property issues with respect to a 2008 lawsuit in the United Kingdom High Court alleging infringement of copyrights and trademarks in costumes for the movie "Star Wars."

**Additional Qualifications**

- Summer Associate, Davis Wright Tremaine LLP, Seattle, Wash., 2006
- Legal Intern, Arts and Cultural Institutions, Office of the City Attorney, San Francisco, Calif., 2005

**Professional & Community Activities**

- Lakeside School Alumni Board, 2009-present
- International Association of Privacy Professionals (IAPP)
- Federal Communications Bar Association

**Education**

J.D., Columbia University School of Law, 2007

- Harlan Fiske Stone Scholar
- Joseph Solomon Fellow, Kernochan Center for Law, Media and the Arts
- George W. Ellis Fellow
- Columbia Human Rights Law Review

B.A., History of Art, Italian, Middlebury College, 2000, cum laude

- Dillon Dunwalke Fellow

**Admissions**

Washington, 2008
U.S. District Court Western District of Washington, 2008

**Noelle Helen Kvasnosky**

*Associate*
noellekvasnosky@dwt.com
206.757.8196

# EXHIBIT D



# Jennifer E.P. Chermoshnyuk

Jennifer Chermoshnyuk has more than a decade of experience at Davis Wright Tremaine handling complex litigation, telecommunications and media cases. She also regularly supports the firm's quality assurance committee. Her fluency in French is an asset for clients in many of our practice areas.

**Practice Highlights**

- Skilled case manager, with experience in electronic and traditional discovery, case research, document review, production and database management for complex litigation cases
- Detail oriented proofreader with a taste for fact-checking and Bluebooking, including an emerging emphasis in Supreme Court briefs and editing articles for various legal publications
- Significant experience coordinating large, multiple party fact- and document-intensive cases
- Bilingual case support to clients both in-house and externally
- Active interpreter/translator with experience in immigration, litigation and pro bono asylum matters

**Additional Qualifications**

- Member of the Washington State Paralegal Association (WSPA), exceeding yearly CLE membership requirements, 2007-present
- E-Discovery Certification, Lexis-Nexis, 2005
- SSI and SSDI Overpayments Training, KCBA, Seattle, 2004
- Volunteer Legal Interpreter/Translator Training, SU Access to Justice Institute, Seattle, 2003

**Professional & Community Activities**

- U.S. Department of State Sponsored Programs Coordinator/Participant Support Volunteer, AFS Intercultural Programs & Exchanges, Seattle, 1994-present
- Volunteer Interpreter/Translator, Northwest Immigrant Rights Project/Volunteer Advocates for Immigrant Justice, Seattle, 2000-present
- Volunteer Paralegal, King County Bar Association's Homeless Intake sessions, DESC, Seattle, 2004-present
- Clinic Assistant, Cross Cultural Family Law Clinic, KCBA Neighborhood Legal Clinics, 2006-present

**Education**

B.A., Political Science, University of Washington, 2000

Diplôme, French Government & European Integration, Institut d'Etudes Politiques, 2000



**Jennifer E.P. Chermoshnyuk**

*Paralegal*

jenniferchermoshnyuk@dwt.com
206.757.8594 direct
206.757.7700 fax

Suite 2200
1201 Third Avenue
Seattle, Washington 98101

**Related Practices**

Communications, Media & Technology
Litigation

**Related Industries**

Telecommunications

# EXHIBIT E



**Davis Wright Tremaine LLP**

Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045

206.622.3150 tel
206.757.7700 fax

Federal ID #91-0839480

Dog Eat Dog Films, Inc.
c/o Blake P. Keating, Vice President-Claims
Media Liability (Professional Liability Group)
OneBeacon Professional Insurance
6800 College Blvd., Suite 350
Overland Park, KS 64112

June 29, 2010
Invoice No. 5894446

Kenneth Weinrib, Esquire
Franklin, Weinrib, Rudell & Vassallo
488 Madison Avenue, 18th Floor
New York, NY 10022

JUNE INVOICE FOR
STATEMENT OF
SERVICES AND DISBURSEMENTS

Matter No.:          0092022-000001
Ken Aronson v. Dog Eat Dog Films, Inc.

| DATE | PROFESSIONAL | HOURS | TOTAL | DESCRIPTION OF SERVICES |
|------|--------------|-------|-------|-------------------------|
| 05/05/10 | B. Johnson | | | REDACTED |
| 05/05/10 | N. Kvasnosky | | | |
| 05/06/10 | B. Johnson | 0.80 | 272.00 | Review Anti-SLAPP issues (.2); REDACTED |

Deduct .40 hours
.40 hours = $136.00

review
SLAPP cases (.2).

PAYMENT IS DUE WITHIN 30 DAYS OF THE DATE OF THIS INVOICE
INTEREST WILL BE CHARGED ON INVOICES WHICH ARE 45 DAYS PAST DUE
PAYMENTS RECEIVED AFTER THE DATE OF THIS INVOICE WILL BE REFLECTED ON NEXT MONTH'S BILLING



www.dwt.com

**Davis Wright Tremaine LLP**

Dog Eat Dog Films, Inc.
Invoice No. 5894446
Page No. 2

| DATE | PROFESSIONAL | HOURS | TOTAL | DESCRIPTION OF SERVICES |
|------|--------------|-------|-------|-------------------------|
| 05/06/10 | N. Kvasnosky | 0.20 | 68.00 | Review and respond to correspondence with B. Johnson regarding application of Washington anti-SLAPP law to plaintiff's claims and possible motion to strike under same |
| 05/07/10 | B. Johnson | 0.80 | 272.00 | Telephone conference with Mr. Weinrib and Mr. Keating regarding case background and proposed defense strategy (.5);    REDACTED |
| | | *Deduct .30 hours* *.50 hours = $170.00* | | |
| 05/07/10 | N. Kvasnosky | 0.90 | 306.00 |    REDACTED |
| | | *Deduct .70 hours* *.20 hours = $68.00* | | |
| | | | | research application of Washington anti-SLAPP law to plaintiff's claims in federal court (.2) |
| 05/07/10 | B. Masterson | | |    REDACTED |
| 05/09/10 | B. Johnson | | | |
| 05/09/10 | N. Kvasnosky | | | |
| 05/10/10 | B. Johnson | | | |
| 05/10/10 | N. Kvasnosky | 1.40 | 476.00 | Review film "Sicko" to identify material    REDACTED    (1.1); review and respond to correspondence with B. Johnson regarding strategy for potential motion for dismiss or motion to strike under WA Anti-SLAPP law (.3) |
| 05/10/10 | F. Hanson | | |    REDACTED |
| 05/11/10 | B. Johnson | | | |
| 05/11/10 | N. Kvasnosky | | | |

**Davis Wright
Tremaine LLP**

Dog Eat Dog Films, Inc.
Invoice No. 5894446
Page No. 3

| DATE | PROFESSIONAL | HOURS | TOTAL | DESCRIPTION OF SERVICES |
|------|-------------|-------|-------|------------------------|
| 05/12/10 | B. Johnson | | | REDACTED |
| 05/12/10 | N. Kvasnosky | 5.10 | 1,734.00 | REDACTED |

Deduct 4.90 hours
.20 hours = $68.00

_____ research
defenses to misappropriation claims (.2);
REDACTED

| 05/12/10 | F. Hanson | | | REDACTED |
| 05/13/10 | B. Johnson | 0.60 | 204.00 | Review motion to dismiss strategy issues (.5);   REDACTED |

Deduct .10 hours
.50 hours = $170.00

| 05/13/10 | N. Kvasnosky | 3.70 | 1,258.00 | REDACTED |

Deduct 3.20 hours
.50 hours = $170.00

_____ strategize
and evaluate options for motion to
dismiss (.5); _____
REDACTED

| 05/13/10 | J. Chermoshnyuk | | | REDACTED |

**Davis Wright
Tremaine LLP**

Dog Eat Dog Films, Inc.
Invoice No. 5894446
Page No. 4

| <u>DATE</u> | <u>PROFESSIONAL</u> | <u>HOURS</u> | <u>TOTAL</u> | <u>DESCRIPTION OF SERVICES</u> |
|---|---|---|---|---|
| 05/13/10 | B. Masterson | | | REDACTED |
| 05/14/10 | B. Johnson | | | |
| 05/14/10 | N. Kvasnosky | | | |
| 05/17/10 | B. Johnson | | | |
| 05/17/10 | N. Kvasnosky | 2.80 | 952.00 | REDACTED |

Deduct .40 hours
2.40 hours = $816.00

meet with Ms. Lim to get information
and materials about Aronson v.
Turnbow, including copies of the VHS
tapes of the original master tapes of the
home video at issue and travel time to
Ms. Lim's Tacoma office (2.2); direct
paralegal in copying VHS tapes to DVD
(.2)

| 05/17/10 | J. Chermoshnyuk | 1.80 | 315.00 | Research vendors and obtain estimates for video transfer (1.2); deliver videos to ProLumina for transfer to DVD (.6) |
| 05/18/10 | B. Johnson | 0.70 | 238.00 | Review scope of application of Anti-SLAPP law to plaintiff's claims (.3); additional legal research regarding motion to strike under WA Anti-SLAPP law (.2);    REDACTED |

Deduct .20 hours
.50 hours = $170.00

| 05/18/10 | N. Kvasnosky | 1.30 | 442.00 | Research and analyze Washington anti-SLAPP statute (.5);   REDACTED |

Deduct .80 hours
.50 hours = $170.00

**Davis Wright Tremaine** LLP

Dog Eat Dog Films, Inc.
Invoice No. 5894446
Page No. 5

| DATE | PROFESSIONAL | HOURS | TOTAL | DESCRIPTION OF SERVICES |
|------|--------------|-------|-------|-------------------------|
| | | | | REDACTED |
| 05/18/10 | J. Chermoshnyuk | 1.50 | 262.50 | Retrieve videos and DVDs from ProLumina (.4); copy DVDs; begin reviewing videos (1.1) |
| 05/19/10 | B. Johnson | | | Redacted |
| 05/19/10 | N. Kvasnosky | 1.30 | 442.00 | REDACTED |

Deduct .70 hours
.60 hours = $204.00

research and strategize support for defenses and motions, including fair use and Washington Anti-SLAPP motion to strike (.6);

REDACTED

| | | | | |
|------|--------------|-------|-------|-------------------------|
| 05/20/10 | B. Johnson | 0.60 | 204.00 | REDACTED |

Deduct .30 hours
.30 hours = $102.00

analyze potential motion to dismiss cases (.3)

| | | | | |
|------|--------------|-------|-------|-------------------------|
| 05/20/10 | N. Kvasnosky | | | REDACTED |
| 05/20/10 | J. Chermoshnyuk | | | |

Davis Wright
Tremaine LLP

Dog Eat Dog Films, Inc.
Invoice No. 5894446
Page No. 6

| **DATE** | **PROFESSIONAL** | **HOURS** | **TOTAL** | **DESCRIPTION OF SERVICES** |
|----------|------------------|-----------|-----------|------------------------------|
| 05/21/10 | B. Johnson | | | REDACTED |
| 05/21/10 | N. Kvasnosky | | | |
| 05/21/10 | B. Masterson | | | |
| 05/22/10 | B. Johnson | | | |
| 05/22/10 | N. Kvasnosky | | | |
| 05/24/10 | N. Kvasnosky | | | |
| 05/25/10 | N. Kvasnosky | | | |
| 05/25/10 | J. Chermoshnyuk | | | |
| 05/26/10 | B. Johnson | 0.20 | 68.00 | Review possible motion to dismiss arguments, etc. |
| 05/26/10 | N. Kvasnosky | 0.20 | 68.00 | Review and respond to correspondence with B. Johnson regarding strategy for motion to strike under WA Anti-SLAPP law and defenses |
| 05/26/10 | J. Chermoshnyuk | 0.50 | 87.50 | Review video for clip breakdown (.5) |

**Davis Wright Tremaine LLP**

Dog Eat Dog Films, Inc.
Invoice No. 5894446
Page No. 7

| DATE | PROFESSIONAL | HOURS | TOTAL | DESCRIPTION OF SERVICES |
|------|-------------|-------|-------|------------------------|
| 05/27/10 | B. Johnson | 0.40 | 136.00 | Work on motion to dismiss strategy issues, etc. |
| 05/27/10 | N. Kvasnosky | 0.70 | 238.00 | Research, analyze and strategize early options to dismiss case |
| 05/27/10 | J. Chermoshnyuk | 0.70 | 122.50 | Complete identification and location of video clips used in film (.7) |
| 05/28/10 | B. Johnson | 0.30 | 102.00 | Work on dismissal analysis |
| 05/28/10 | N. Kvasnosky | 0.60 | 204.00 | Review length of individual clips used in "Sicko" from the underlying work (.2); |

Deduct .40 hours
.20 hours = $68.00

REDACTED

| 05/31/10 | N. Kvasnosky | 3.70 | 1,258.00 | Analyze and research claims, and draft memorandum regarding best options for summary adjudication of claims |

---

### DISBURSEMENT DETAIL

| DESCRIPTION | QUANTITY | AMOUNT |
|-------------|----------|--------|
| West Publishing (billed at cost) computerized legal research 05/13/10, per B. Masterson | 1 | 35.60 |

---

### TOTAL SERVICES AND DISBURSEMENTS - THIS INVOICE

Total Current Services            REDACTED    | 18.40 hours = new total of $5,513.50 |

Total Current Disbursements                   | $35.60 |

Total Current Invoice                          | New Grand Total:  $5,549.10 |

---

REDACTED



**Davis Wright
Tremaine** LLP

Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045

206.622.3150 tel
206.757.7700 fax

Federal ID #91-0839480

Dog Eat Dog Films, Inc.
c/o Blake P. Keating, Vice President-Claims
Media Liability (Professional Liability Group)
OneBeacon Professional Insurance
6800 College Blvd., Suite 350
Overland Park, KS 64112

July 14, 2010
Invoice No. 5897283

Kenneth Weinrib, Esquire
Franklin, Weinrib, Rudell & Vassallo
488 Madison Avenue, 18th Floor
New York, NY 10022

JULY INVOICE FOR
STATEMENT OF
SERVICES AND DISBURSEMENTS

Matter No.:          0092022-000001
Ken Aronson v. Dog Eat Dog Films, Inc.

| DATE | PROFESSIONAL | HOURS | TOTAL | DESCRIPTION OF SERVICES |
|------|--------------|-------|-------|--------------------------|
| 06/01/10 | B. Johnson | 0.90 | 306.00 | Review possible motion to dismiss cases (.6); additional legal research regarding same (.3) |
| 06/01/10 | N. Kvasnosky | 1.50 | 510.00 | Research public interest defense, and documentary films as First Amendment-protected speech (1.0); analyze and draft memorandum with options for summary adjudication (0.5) |
| 06/02/10 | B. Johnson | 1.80 | 612.00 | Review analysis regarding motion to dismiss strategy, etc. (.6); review cases regarding same (.2); analyze and draft dismissal arguments (.7); review preemption cases (.3) |
| 06/02/10 | N. Kvasnosky | 5.00 | 1,700.00 | Analyze motion to strike state law claims under Washington Anti-SLAPP law (1.2);     REDACTED |

Deduct 3.40 hours
1.60 hours = $544.00

PAYMENT IS DUE WITHIN 30 DAYS OF THE DATE OF THIS INVOICE
INTEREST WILL BE CHARGED ON INVOICES WHICH ARE 45 DAYS PAST DUE
PAYMENTS RECEIVED AFTER THE DATE OF THIS INVOICE WILL BE REFLECTED ON NEXT MONTH'S BILLING

| Anchorage | New York | Seattle |
| Bellevue | Portland | Shanghai |
| Los Angeles | San Francisco | Washington, D.C. |

www.dwt.com

**Davis Wright Tremaine LLP**

Dog Eat Dog Films, Inc.
Invoice No. 5897283
Page No. 2

| DATE | PROFESSIONAL | HOURS | TOTAL | DESCRIPTION OF SERVICES |
|------|--------------|-------|-------|-------------------------|
| | | | | REDACTED |
| | | | | review and respond to correspondence with paralegal regarding filing motions to dismiss   REDACTED   (0.1); review and respond to correspondence with B. Johnson regarding Anti-SLAPP and potential SJ motions (0.1);  REDACTED |
| | | | | research options for judicial notice of material without converting to motion for summary judgment (0.2) |
| 06/03/10 | B. Johnson | 1.80 | 612.00 | REDACTED   analyze suggested strategy regarding motions (.2); review anti-SLAPP applicability cases (.4); email message to Mr. Weinrib and Mr. Keating regarding suggested initial motion strategy (.1) |
| | | Deduct 1.10 hours .70 hours = $238.00 | | |
| 06/03/10 | N. Kvasnosky | 0.80 | 272.00 | Prepare Motions to Strike under Anti-SLAPP Act, including correspondence with B. Johnson regarding strategy (0.7); direct paralegal in preparing supporting materials for filing (0.1) |
| 06/03/10 | J. Chermoshnyuk | 0.40 | 70.00 | Begin filing procedure research |
| 06/04/10 | B. Johnson | 0.50 | 170.00 | Email message from Mr. Weinrib regarding initial strategy (.1); review draft motion to dismiss (.4) |
| 06/04/10 | N. Kvasnosky | 1.30 | 442.00 | REDACTED   research options for motion for dismissal |
| 06/04/10 | J. Chermoshnyuk | 1.50 | 262.50 | REDACTED   Redacted   ; draft language for labels and arrange for DVDs to be copied for same (.2); Redacted |
| | | Deduct 1.30 hours .20 hours = $35.00 | | |
| 06/05/10 | N. Kvasnosky | | | REDACTED |
| 06/06/10 | B. Johnson | 1.30 | 442.00 | REDACTED   review and edit draft motion to strike (.9) |
| | | Deduct .40 hours .90 hours = $306.00 | | |
| 06/06/10 | N. Kvasnosky | 9.90 | 3,366.00 | Research and draft Special Motion to Strike state law claims of misappropriation of likeness and invasion of privacy under Anti-SLAPP |
| | | Deduct 2.20 hours 7.70 hours = $2,618.00 | | |



Dog Eat Dog Films, Inc.
Invoice No. 5897283
Page No. 3

| DATE | PROFESSIONAL | HOURS | TOTAL | DESCRIPTION OF SERVICES |
|------|-------------|-------|-------|------------------------|
| | | | | Act (6.7);  ___REDACTED___ _____ research whether the Copyright Act preempts plaintiff's state law claims for Motion to Strike under Anti-SLAPP Act(1.0); _____ REDACTED |
| 06/07/10 | B. Johnson | 4.50 | 1,530.00 | Review SLAPP/preemption cases (1.8); revise and edit draft Anti-SLAPP motion to strike and answer (.9); revise and edit same (.5); email messages to and from Mr. Weinrib et al. regarding same (.3); review and edit draft motion to strike REDACTED (.4); additional legal research regarding same (.6) |
| 06/07/10 | N. Kvasnosky | 5.10 [Deduct 1.20 hours 3.90 hours = $1,326.00] | 1,734.00 | REDACTED review and respond to correspondence with B. Johnson regarding Motion to Strike and Answer to Complaint (0.1); direct paralegal in preparing materials for filing with Special Motion to Strike (0.3); revise Special Motion to Strike (1.2); research whether state law claims are preempted by copyright law for Special Motion to Strike under Anti-SLAPP Act (0.5); research Erie question of whether Anti-SLAPP Act will apply in a federal question action (1.8); REDACTED |
| 06/07/10 | J. Chermoshnyuk | 3.80 [Deduct .40 hours 3.40 hours = $595.00] | 665.00 | Redacted Redacted research and pull WA anti-SLAPP legislation (.4); begin fact checking special motion to strike (2.3); order copies of SiCKO from Amazon.com for use as exhibits to same (.2); capture dialogue used in video clips (.5) |
| 06/07/10 | K. Fyfe | | | Redacted |
| 06/08/10 | B. Johnson | 4.40 [Deduct 3.50 hours .90 hours = $306.00] | 1,496.00 | REDACTED |

**Davis Wright**
**Tremaine** LLP

Dog Eat Dog Films, Inc.
Invoice No. 5897283
Page No. 4

| DATE | PROFESSIONAL | HOURS | TOTAL | DESCRIPTION OF SERVICES |
|------|-------------|-------|-------|------------------------|
| | | | | REDACTED |
| | | | | work on draft motion to strike (.9); |
| | | | | REDACTED |
| 06/08/10 | K. Sager | | | REDACTED |
| 06/08/10 | N. Kvasnosky | 7.80 | 2,652.00 | REDACTED |

Deduct 2.60 hours
5.20 hours = $1,768.00

research
Washington statute of limitations for
invasion of privacy (other than false
light) and misappropriation of likeness
for Anti-SLAPP Motion to Strike (1.2);
draft notice of filing physical materials
to accompany Motion to Strike (0.2);
REDACTED
draft and revise
Motion to Strike under Anti-SLAPP Act
(3.8)

| 06/08/10 | J. Chermoshnyuk | 3.80 | 665.00 | Review and cite check motion to strike (2.0);   Redacted |

Deduct 1.80 hours
2.00 hours = $350.00

| 06/09/10 | B. Johnson | 2.60 | 884.00 | REDACTED |

Deduct 1.30 hours
1.30 hours = $442.00

review draft anti-SLAPP motion (.8);
revise and edit same (.5)

| 06/09/10 | N. Kvasnosky | 8.00 | 2,720.00 | REDACTED |

Deduct 1.50 hours
6.50 hours = $2,210.00

Davis Wright
Tremaine LLP

Dog Eat Dog Films, Inc.
Invoice No. 5897283
Page No. 5

| DATE | PROFESSIONAL | HOURS | TOTAL | DESCRIPTION OF SERVICES |
|------|-------------|-------|-------|------------------------|
| | | | | REDACTED |
| | | | | confirm timing on calendaring Motion to Strike under Washington Anti-SLAPP Act (0.2); research applicability of Washington Anti-SLAPP law in federal court and interplay of procedural aspects of Federal Rules of Civil Procedure with Washington's Anti-SLAPP Act (0.9); research, analyze and draft argument in Anti-SLAPP motion for applicability of Washington Anti-SLAPP Act in federal court (1.0); research case law support for argument in Anti-SLAPP motion that a documentary film qualifies as "speech" (1.5); research, analyze and draft argument for Anti-SLAPP motion that plaintiffs' state law claims are preempted by section 301 (2.0); research and draft argument for Anti-SLAPP motion that defendant is entitled to its fees and costs in bringing a Motion to Strike (0.3); correspond with B. Johnson regarding strategy and draft for Motion to Strike under Anti-SLAPP Act (0.6) |
| 06/09/10 | J. Chermoshnyuk | | | REDACTED |
| 06/09/10 | K. Fyfe | | | |
| 06/10/10 | B. Johnson | 1.90 | 646.00 | Revise and edit draft anti-SLAPP motion and supporting material (.9); legal research regarding same (.7); work on draft Turnbow declaration (.2); email message to Mr. Weinrib et al. (.1) |
| 06/10/10 | N. Kvasnosky | 10.10 | 3,434.00 | Strategize regarding drafting and revising arguments in to Motion to Strike under Anti-SLAPP law (1.0); draft declaration of Mr. Turnbow for Motion to Strike under Anti-SLAPP |

**Davis Wright Tremaine LLP**

Dog Eat Dog Films, Inc.
Invoice No. 5897283
Page No. 6

| DATE | PROFESSIONAL | HOURS | TOTAL | DESCRIPTION OF SERVICES |
|------|--------------|-------|-------|-------------------------|
| | | | | law, including identifying and locating documents to be authenticated (0.8); review materials sent by Goldflat Productions relating to Turnbow footage (0.3); review and respond to correspondence with Mr. Turnbow and his attorney regarding Mr. Turnbow's declaration for Anti-SLAPP Motion to Strike (0.2); telephone conversations with Mr. Turnbow regarding declaration (0.4); leave voicemail for Mr. Turnbow's attorney regarding declaration (0.1); direct paralegal in acquiring copies of non-physical evidence to file with the court (0.3); review and respond to correspondence with B. Johnson regarding declaration of Mr. Turnbow for Anti-SLAPP Motion to Strike (0.2); draft revisions to Motion to Strike under Anti-SLAPP Act (6.5); review and respond to correspondence with Mr. Weinrib and Ms. Moore regarding draft of Anti-SLAPP Motion to Strike for their review (0.1); review and respond to correspondence with B. Johnson regarding Motion to Strike under Anti-SLAPP Act (0.2) |
| 06/10/10 | J. Chermoshnyuk | 8.10 | 1,417.50 | Strategize with N. Kvasnosky regarding drafting declaration for Mr. Eric Turnbow (.6);            Redacted |
| | | Deduct .50 hours<br>7.20 hours = $1260.00 | | review SiCKO for verbatim song lyrics (.3); assist N. Kvasnosky with preparation of declaration and exhibits for Mr. Eric Turnbow (2.4); arrange for duplication of DVDs to be filed with declaration of Mr. Turnbow (.5); fact check video citations in motion to strike (1.2); cite check brief (2.8) |
| 06/10/10 | C. Sevo | | | Redacted |
| 06/11/10 | B. Johnson | 3.30 | 1,122.00 | Revise and edit draft memorandum in support of special motion to strike (1.1); review cases re same (.6); review and edit draft declaration, etc. (.5); review and edit draft order and motion (.2); receipt and review special motion to |

**Davis Wright Tremaine LLP**

Dog Eat Dog Films, Inc.
Invoice No. 5897283
Page No. 7

| DATE | PROFESSIONAL | HOURS | TOTAL | DESCRIPTION OF SERVICES |
|------|--------------|-------|-------|-------------------------|
| | | | | strike and supporting data, as filed (.8); email message to Mr. Weinrib, Ms. Moore, and Mr. Keating regarding same (.1) |
| 06/11/10 | N. Kvasnosky | 7.90 | 2,686.00 | Revise and finalize Motion to Strike under Washington Anti-SLAPP Act, including substantive cite checking and shepardizing cases (5.0); draft declaration of N. Kvasnosky in support of Motion to Strike under Washington Anti-SLAPP Act (0.5); review and respond to correspondence with B. Johnson regarding finalizing and revising Motion to Strike under Washington Anti-SLAPP Act (0.7); direct legal assistant in coordinating filing of Motion to Strike under Washington Anti-SLAPP Act and related Declarations, Notices and Exhibits (0.7); draft Proposed Order for Motion to Strike under Washington Anti-SLAPP Act (0.5); direct paralegal in preparing exhibits to be attached to declarations filed with Motion to Strike under Anti-SLAPP law (0.2); direct librarian in Shepardizing cases in Motion to Strike under Washington Anti-SLAPP law (0.1); email Proposed Order in Motion to Strike to judge's chambers per local rules (0.1); confirm filing of documents related to Motion to Strike under Washington Anti-SLAPP Act (0.1) |
| 06/11/10 | J. Chermoshnyuk | 2.30 | 402.50 | Verify copies of DVD to be filed as attachments to declaration of Eric Turnbow (.3); review and final cite check of special motion to strike (1.5); assist with filing of same (.2); download, save and distribute conform copies of court filings (.5) |
| 06/11/10 | F. Hanson | | | Redacted |
| 06/14/10 | B. Johnson | | | |
| 06/14/10 | N. Kvasnosky | | | |

**Davis Wright Tremaine** LLP

Dog Eat Dog Films, Inc.
Invoice No. 5897283
Page No. 8

| DATE | PROFESSIONAL | HOURS | TOTAL | DESCRIPTION OF SERVICES |
|------|-------------|-------|-------|------------------------|
| | | | | REDACTED |
| 06/15/10 | B. Johnson | | | |
| 06/16/10 | N. Kvasnosky | | | |
| 06/16/10 | J. Chermoshnyuk | | | |
| 06/17/10 | B. Johnson | | | |
| 06/18/10 | N. Kvasnosky | | | |
| 06/18/10 | J. Chermoshnyuk | | | |
| 06/19/10 | B. Johnson | | | |
| 06/21/10 | B. Johnson | | | |
| 06/21/10 | N. Kvasnosky | | | |
| 06/21/10 | J. Chermoshnyuk | | | |
| 06/22/10 | B. Johnson | | | |
| 06/22/10 | N. Kvasnosky | | | |



Dog Eat Dog Films, Inc.
Invoice No. 5897283
Page No. 9

| DATE | PROFESSIONAL | HOURS | TOTAL | DESCRIPTION OF SERVICES |
|------|-------------|-------|-------|------------------------|
| | | | | REDACTED |
| 06/23/10 | B. Johnson | | | |
| 06/24/10 | B. Johnson | | | |
| 06/24/10 | N. Kvasnosky | | | |
| 06/24/10 | J. Chermoshnyuk | | | |
| 06/25/10 | B. Johnson | | | |
| 06/27/10 | B. Johnson | | | |
| 06/28/10 | B. Johnson | | | |
| 06/28/10 | N. Kvasnosky | | | |
| 06/28/10 | J. Chermoshnyuk | | | |
| 06/29/10 | B. Johnson | | | |
| 06/29/10 | N. Kvasnosky | | | |

**Davis Wright
Tremaine** LLP

Dog Eat Dog Films, Inc.
Invoice No. 5897283
Page No. 10

| DATE | PROFESSIONAL | HOURS | TOTAL | DESCRIPTION OF SERVICES |
|------|--------------|-------|-------|-------------------------|
| | | | | REDACTED |
| 06/29/10 | J. Chermoshnyuk | | | |
| 06/30/10 | B. Johnson | | | |
| 06/30/10 | N. Kvasnosky | 0.90 | 306.00 | REDACTED |

Deduct .40 hours
.50 hours = $170.00

strategize regarding plaintiff's
anticipated response to Motion to Strike
(0.5)

## DISBURSEMENT DETAIL

| DESCRIPTION | QUANTITY | AMOUNT |
|-------------|----------|--------|
| REDACTED | | |
| Miscellaneous Expense -- Jennifer Chermoshnyuk 06/08/2010 Amazon.com 3 copies of the movie "Sicko" for exhibit in filing | 1 | 57.94 |
| REDACTED | | |
| Professional services - - PROLUMINA TRIAL TECHNOLOGIES - 5/18/10 Digital encoding VHS to DVD per J. Chermoshnyuk | 1 | 246.38 |
| REDACTED | | |
| West Publishing (billed at cost) computerized legal research 06/11/10 per F. Hanson | 1 | 146.12 |

**Davis Wright Tremaine LLP**

Dog Eat Dog Films, Inc.
Invoice No. 5897283
Page No. 11

## TOTAL SERVICES AND DISBURSEMENTS - THIS INVOICE

| | | |
|---|---|---|
| Total Current Services | REDACTED | 79.20 hours = new total of $24,370.50 |
| Total Current Disbursements | | New total of $450.44 |
| | | |
| Total Current Invoice | | Grand Total:  $24,820.94 |



**Davis Wright Tremaine LLP**

Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045

206.622.3150 tel
206.757.7700 fax

Federal ID #91-0839480

Dog Eat Dog Films, Inc.
c/o Blake P. Keating, Vice President-Claims
Media Liability (Professional Liability Group)
OneBeacon Professional Insurance
6800 College Blvd., Suite 350
Overland Park, KS 64112

August 25, 2010
Invoice No. 5908506

Kenneth Weinrib, Esquire
Franklin, Weinrib, Rudell & Vassallo
488 Madison Avenue, 18th Floor
New York, NY 10022

## AUGUST INVOICE FOR
## STATEMENT OF
## SERVICES AND DISBURSEMENTS

Matter No.:          0092022-000001
Ken Aronson v. Dog Eat Dog Films, Inc.

| DATE | PROFESSIONAL | HOURS | TOTAL | DESCRIPTION OF SERVICES |
|------|-------------|-------|-------|------------------------|
| 07/01/10 | B. Johnson | REDACTED | | REDACTED |
| 07/02/10 | B. Johnson | 0.80 | 272.00 | REDACTED |
| | | Deduct .6 hours .2 hours = $68.00 total | | review potential Anti-SLAPP reply brief arguments (.2) |
| 07/02/10 | N. Kvasnosky | 0.30 | 102.00 | Review correspondence from B. Johnson regarding Special Motion to Strike (0.1); anticipate arguments in plaintiff's Response to Special Motion to Strike (0.2) |
| 07/05/10 | B. Johnson | 1.90 | 646.00 | REDACTED |
| | | Deduct .2 hours 1.7 hours = $578.00 total | | review declaration and opposition to Anti-SLAPP motion (1.1); review legal research regarding same (.6) |

PAYMENT IS DUE WITHIN 30 DAYS OF THE DATE OF THIS INVOICE
INTEREST WILL BE CHARGED ON INVOICES WHICH ARE 45 DAYS PAST DUE
PAYMENTS RECEIVED AFTER THE DATE OF THIS INVOICE WILL BE REFLECTED ON NEXT MONTH'S BILLING

| Anchorage | New York | Seattle |
|-----------|----------|---------|
| Bellevue | Portland | Shanghai |
| Los Angeles | San Francisco | Washington, D.C. |

www.dwt.com

**Davis Wright Tremaine LLP**

Dog Eat Dog Films, Inc.
Invoice No. 5908506
Page No. 2

| DATE | PROFESSIONAL | HOURS | TOTAL | DESCRIPTION OF SERVICES |
|------|--------------|-------|-------|-------------------------|
| 07/05/10 | N. Kvasnosky | 0.10 | 34.00 | Review plaintiff's Response to Special Motion to Strike |
| 07/06/10 | B. Johnson | 1.30 | 442.00 | Review cases regarding reply brief arguments, etc. |
| 07/06/10 | N. Kvasnosky | 2.60 | 884.00 | Review and analyze Plaintiff's Response to Motion to Strike, including reviewing authority cited in case (1.9); review and respond to correspondence with B. Johnson regarding strategy for Reply in Support of Motion to Strike (0.2); strategize arguments for Reply in Support of Motion to Strike (0.5) |
| 07/06/10 | J. Chermoshnyuk | 2.50 | 437.50 | Download, distribute and save plaintiff's opposition to special motion to strike claims (.2); review same (.9); research session law on anti-SLAPP to verify if codified (.6); pull and organize case authority (.8) |
| 07/06/10 | F. Hanson | REDACTED | | REDACTED |
| 07/07/10 | B. Johnson | 3.00 | 1,020.00 | REDACTED |

Deduct .8 hours
2.2 hours = $748.00 total

... work on reply brief outline of cases, arguments (.8); REDACTED

work on draft reply brief in support of motion to strike (.9); additional legal research regarding same (.5)

| 07/07/10 | N. Kvasnosky | 7.00 | 2,380.00 | Research and draft Reply in Support of Special Motion to Strike (6.6);   REDACTED |

Deduct .4 hours
6.6 hours = $2244.00 total

| 07/07/10 | J. Chermoshnyuk | 3.40 | 595.00 | Confer with N. Kvasnosky regarding deposition testimony of Turnbow negating Aronson claim of exclusive videotaping (.9); review depositions for additional testimony re same (1.3); pull opposition authorities (1.2) |
| 07/08/10 | B. Johnson | 3.10 | 1,054.00 | Email message to Mr. Weinrib, Ms. Moore, and Mr. Keating regarding copies of opposition to Anti-SLAPP motion (.1); review additional Anti-SLAPP cases, commercial speech and First Amendment decisions, and analyze same (1.7); work on draft reply (.5); revise and edit same (.8) |

**Davis Wright**
**Tremaine** LLP

Dog Eat Dog Films, Inc.
Invoice No. 5908506
Page No. 3

| **DATE** | **PROFESSIONAL** | **HOURS** | **TOTAL** | **DESCRIPTION OF SERVICES** |
|------|------|------|------|------|
| 07/08/10 | N. Kvasnosky | 12.90 | 4,386.00 | Research and draft Reply in Support of Special Motion to Strike |
| 07/08/10 | J. Chermoshnyuk | 0.60 | 105.00 | Review authorities cited for law regarding jury required findings of fact (.3); confirm local rules on format and length of reply brief (.3) |
| 07/09/10 | B. Johnson | 3.90 | 1,326.00 | Revise and edit draft reply (1.0); additional review of commercial speech and similar cases (1.6); revise and edit draft reply brief (.8); finalize same (.3); email message to clients with copies of reply brief (.1); |
| | | | | REDACTED |
| 07/09/10 | V. Hendrickson | REDACTED | | REDACTED |
| 07/09/10 | N. Kvasnosky | 10.60 | 3,604.00 | Research, draft, and finalize Reply in Support of Special Motion to Strike (10.4); direct assistant in filing of Reply in Support of Special Motion to Strike(0.2) |
| 07/09/10 | N. Kvasnosky | REDACTED | | REDACTED |
| 07/09/10 | J. Chermoshnyuk | 2.90 | 507.50 | Pull and print new case authorities cited (.6); proofread reply brief (1.2); cite check pin cites (1.1) |
| 07/09/10 | F. Hanson | | | Redacted |
| 07/09/10 | F. Hanson | | | |
| 07/12/10 | B. Johnson | | | |
| 07/12/10 | J. Chermoshnyuk | | | |
| 07/13/10 | B. Johnson | | | |
| 07/13/10 | N. Kvasnosky | | | |
| 07/14/10 | B. Johnson | | | |
| 07/14/10 | N. Kvasnosky | | | |

Deduct .1 hours
3.8 hours = $1292 total

**Davis Wright
Tremaine LLP**

Dog Eat Dog Films, Inc.
Invoice No. 5908506
Page No. 4

| **DATE** | **PROFESSIONAL** | **HOURS** | **TOTAL** | **DESCRIPTION OF SERVICES** |
|---|---|---|---|---|
| | | | | Redacted |
| 07/15/10 | B. Johnson | | | |
| 07/15/10 | N. Kvasnosky | | | |
| 07/16/10 | B. Johnson | | | |
| 07/16/10 | N. Kvasnosky | | | |
| 07/19/10 | B. Johnson | | | |
| 07/19/10 | N. Kvasnosky | | | |
| 07/19/10 | J. Chermoshnyuk | | | |
| 07/20/10 | B. Johnson | | | |
| 07/20/10 | N. Kvasnosky | | | |



Dog Eat Dog Films, Inc.
Invoice No. 5908506
Page No. 5

| **DATE** | **PROFESSIONAL** | **HOURS** | **TOTAL** | **DESCRIPTION OF SERVICES** |
|---|---|---|---|---|
| | | | | Redacted |
| 07/20/10 | J. Chermoshnyuk | | | |
| 07/21/10 | B. Johnson | | | |
| 07/21/10 | N. Kvasnosky | | | |
| 07/21/10 | J. Chermoshnyuk | | | |
| 07/22/10 | B. Johnson | | | |
| 07/23/10 | N. Kvasnosky | | | |
| 07/23/10 | J. Chermoshnyuk | | | |
| 07/24/10 | B. Johnson | | | |
| 07/26/10 | B. Johnson | | | |
| 07/26/10 | N. Kvasnosky | | | |



Dog Eat Dog Films, Inc.
Invoice No. 5908506
Page No. 6

| **DATE** | **PROFESSIONAL** | **HOURS** | **TOTAL** | **DESCRIPTION OF SERVICES** |
|---|---|---|---|---|
| | | | | Redacted |
| 07/26/10 | J. Chermoshnyuk | | | |
| 07/27/10 | B. Johnson | | | |
| 07/27/10 | N. Kvasnosky | | | |
| 07/27/10 | J. Chermoshnyuk | | | |
| 07/29/10 | B. Johnson | | | |
| 07/29/10 | N. Kvasnosky | | | |
| 07/29/10 | J. Chermoshnyuk | | | |
| 07/30/10 | B. Johnson | | | |
| | Total Hours | | | |

## DISBURSEMENT DETAIL

| **DESCRIPTION** | **QUANTITY** | **AMOUNT** |
|---|---|---|
| REDACTED | | |
| Lexis-Nexis (billed at cost) computerized legal research 07/09/10 per F. Hanson | 1 | 9.54 |
| Lexis-Nexis (billed at cost) computerized legal research 07/09/10 per F. Hanson | 1 | 9.55 |
| Redacted | | |

**Davis Wright
Tremaine** LLP

Dog Eat Dog Films, Inc.
Invoice No. 5908506
Page No. 7

Redacted

| | | |
|---|---|---|
| Washington Legal Messengers T. Vertetis & Western District in Tacoma, 06/11/ | 1 | 75.00 |

Redacted

| | | |
|---|---|---|
| West Publishing (billed at cost) computerized legal research 07/07/10 per C. Johnson | 1 | 8.53 |
| West Publishing (billed at cost) computerized legal research 07/09/10 per F. Hanson | 1 | 109.14 |
| Total Current Disbursements | | $949.34 |

## TOTAL SERVICES AND DISBURSEMENTS - THIS INVOICE

| | | |
|---|---|---|
| Total Current Services | REDACTED | 54.8 hours = new total of $17,081.00 |
| Total Current Disbursements | | New total of $211.76 |
| Total Current Invoice | | New Grand Total: $17,292.76 |

Redacted